J. S45028/16

2016 PA Super 170

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
COREY PALMER :
        Appellant :
: No. 1792 WDA 2015

Appeal from the Judgment of Sentence October 15, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0003703-2014

BEFORE: OLSON, DUBOW AND PLATT, JJ.[*]

OPINION BY DUBOW, J.: **FILED AUGUST 04, 2016**

Appellant, Corey Palmer, appeals from the October 15, 2015 Judgment of Sentence entered in the Allegheny County Court of Common Pleas. Appellant challenges the denial of his suppression motion. We hold that where officers properly stopped a vehicle for a traffic infraction, where the driver did not stop in a legal parking spot, and where none of the occupants of the vehicle had a valid license, towing the vehicle was a task tied to the traffic stop. Therefore, officers had the authority, as part of the ongoing traffic stop, to order Appellant to exit the vehicle so that it could be towed. Accordingly, we affirm the trial court's denial of Appellant's Motion to Suppress.

_____

[*] Retired Senior Judge Assigned to the Superior Court.

The trial court summarized the factual and procedural history as follows.

On March 4, 2014, at approximately 11:40 a.m., Detective Jamie Caterino of the Borough of Munhall was driving southbound on Andrews Street in a marked vehicle when he observed a maroon Pontiac driving westbound on 13th Avenue. The detective's attention was drawn to the [three] occupants of the maroon vehicle when he noticed that one of the passengers of the vehicle attempted to shield his face from the officer with his hand. Additionally, Detective Catarino recognized the driver of the vehicle from prior interactions and investigations, and he knew that the driver did not possess a valid driver's license. The detective initiated a traffic stop and called for back-up.

The maroon vehicle came to a stop on the roadway in front of the Subway Restaurant on 22nd street. Detective Caterino approached the vehicle, confirmed that the driver was unlicensed and noted [Appellant's] presence in the vehicle. [Appellant] was located in the rear seat on the passenger side of the vehicle. Detective Caterino recognized [Appellant] from prior arrests and from the time that he had spent as a school resource officer at Steel Valley High School. The detective also had previously investigated [Appellant] for firearm offenses, and he knew that [Appellant] was a suspect in a recent shooting that occurred in the area.

During the course of the stop, [Appellant] never made eye contact with the detective. Instead, [Appellant] looked "straight ahead in a gaze stare." Detective Caterino instructed [Appellant] to keep his hands on the back of the front seat passenger chair's headrest, but [Appellant] repeatedly failed to comply with the officer's instructions. [Appellant] "kept putting his hands in his pockets or down near the side of his legs." Detective Caterino had to order [Appellant] to keep his hands on the headrest "numerous times" before [Appellant] ultimately complied. The detective became concerned that [Appellant] might be in possession of a weapon since he repeatedly disregarded the detective's instructions and continued to reach towards his side and pockets.

Upon determining that none of the occupants of the vehicle possessed a valid license, Detective Caterino arranged for the

vehicle to be towed from the area. The vehicle was not stopped in a legal parking space so it could not remain in the location where the traffic stop occurred. Detective Caterino eventually asked the driver, front seat passenger, and [Appellant] to exit the vehicle, as the occupants were prohibited from remaining in the vehicle while it was being towed.

Detective Caterino observed that [Appellant] "became very nervous" when he exited the vehicle. [Appellant's] legs began "shaking," and "he was fidgeting around." The detective asked [Appellant] whether he "had anything on him," and [Appellant] responded that he did not. Given [Appellant's] behavior, initial non-compliance with the detective's instructions, repeated reaching movements towards his person, and the detective's prior knowledge of [Appellant] involvement in firearm offenses, Detective Caterino conducted a pat-down of [Appellant] to ensure that he did not have any weapons on his person.

Detective Caterino frisked [Appellant], beginning with his arms, then proceeding to his waist and then his legs. As the detective was patting down [Appellant's] lower left leg, he felt a bulge which he immediately recognized to be bundles of heroin based on his training and experience as a narcotics detective and police officer. The detective asked [Appellant] what the object was just to see what [Appellant's] response would be, and [Appellant] replied that he did not know. Knowing that the object was bundled heroin, Detective Caterino removed the object from [Appellant's] pocket and counted five (5) bundles of heroin. [Appellant] was placed under arrest and was searched incident to arrest.

Detective Caterino asked [Appellant] a second time whether he had anything else on his person, but [Appellant] did not respond to the detective and just stared straight ahead. As detective Caterino began searching the right side of [Appellant's] body, he immediately noticed a bulge that he recognized to be a firearm in the lower pant area of [Appellant's] right leg. (HT, p. 18). A firearm was recovered from the lower right pant area of [Appellant]. [Appellant] was then transported to the jail, at which time another five (5) bundles of heroin were found on his person.

Trial Court Opinion, filed 1/29/16, at 3-6 (citations omitted).

Appellant was arrested and charged with Carrying a Firearm Without a License, Possession with Intent to Deliver a Controlled Substance ("PWID"), Possession of a Controlled Substance, and Possession of Drug Paraphernalia.[1]

Appellant filed a Motion to Suppress, arguing that because the traffic stop had ended before Appellant was ordered to exit the vehicle, police lacked reasonable suspicion to justify the frisk. Motion to Suppress, filed 11/10/14, at 8. After a hearing, the trial court denied the Motion.

Following a stipulated bench trial, the trial court convicted Appellant of all four charges. On October 15, 2015, the trial court sentenced Appellant to two to four years of incarceration on the firearm offense, with a concurrent sentence of one to two years of incarceration followed by three years of probation on the PWID conviction. No further penalty was imposed on the remaining convictions.

Appellant timely appealed, raising the following issue:

> Did the trial court err in denying [Appellant's] Motion to Suppress considering any factors that may have given rise to reasonable suspicion of criminal activity during the course of a traffic stop may not be used to justify an investigative detention and search commenced after the conclusion of a valid traffic stop where the totality of circumstances (*sic*) established that these factors did not raise immediate concern for the safety of the officers who undertook the initial vehicle detention?

Appellant's Brief at 5.

---

[1] 18 Pa.C.S. § 6106(a)(1), 35 Pa.C.S. § 780-113(a)(30), 35 Pa.C.S. § 780-113(a)(16), and 35 Pa.C.S. § 780-113(a)(32) respectively.

Our well-settled standard of review in an appeal from an order denying a Motion to Suppress is as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (citation omitted).

In his brief to this Court, Appellant argues that, because the traffic stop had concluded before he was ordered to exit the vehicle, the reasonable suspicion analysis is limited to considering only Appellant's nervous behavior after exiting the vehicle. Appellant's Brief at 21. We disagree. Because the car needed to be towed, the traffic stop was still ongoing when the police ordered Appellant to exit the vehicle. Thus, the trial court properly considered the totality of Appellant's behavior in concluding that the detective had reasonable suspicion to justify the search. Therefore, we find that Appellant is not entitled to relief on this claim.

It is well-settled that officers conducting a valid traffic stop have an absolute right to ask the occupants of a vehicle to step out of the car for the duration of the traffic stop. *Commonwealth v. Boyd*, 17 A.3d 1274, 1277

(Pa. Super. 2011). "Our Supreme Court has recognized expressly that an officer conducting a valid traffic stop may order the occupants of a vehicle to alight to assure his own safety." **Commonwealth v. Reppert**, 814 A.2d 1196, 1202 (Pa. Super. 2002). This is true "even absent a reasonable suspicion that criminal activity is afoot." **Commonwealth v. Pratt**, 930 A.2d 561, 564 (Pa. Super. 2007).

This absolute right to order occupants out of a vehicle is limited in duration, however, and "[o]nce the primary traffic stop has concluded . . . the officer's authority to order either driver or occupant from the car is extinguished." **Reppert, supra** at 1202. As this Court has recognized, "[t]he matter of when a traffic stop has concluded or otherwise given way to a new interaction does not lend itself to a 'brightline' [*sic*] definition." **Id.**

The United States Supreme Court has held that authority for a seizure pursuant to a traffic stop ends "when tasks tied to the traffic infraction are— or reasonably should have been—completed." **Rodriguez v. United States**, 135 S.Ct. 1609, 1614 (2015). Applying this principle, this Court's analysis of similar cases has turned on whether the purpose of the traffic stop was accomplished prior to ordering occupants out of the vehicle, and whether the occupants had previously been issued citations or told that they were free to leave. **See Commonwealth v. Freeman**, 757 A.2d 903, 907 (noting that once an officer has accomplished the purpose of a traffic stop and informed the driver that she was free to leave, any re-engagement by

the officer may constitute a seizure); ***Reppert, supra*** at 1203 (finding that the traffic stop concluded prior to the officer ordering the occupant out of the vehicle where the officer "had realized the purpose for the stop and had no further reason to detain the driver of the vehicle or its occupants under the guise of the original traffic infraction."); ***Commonwealth v. Parker***, 619 A.2d 735 (Pa. Super. 1993) (holding that an officer's ongoing detention of a driver stopped for a moving violation, even after the officer had finished issuing a traffic citation, constituted an improper seizure absent articulable grounds to suspect criminal activity).

When an officer determines that the driver of a vehicle does not have a valid driver's license, the tasks tied to the stop are not limited to simply issuing a citation. ***Commonwealth v. Lagenella***, 83 A.3d 94, 101 (Pa. 2013) (noting that "an officer who stops a vehicle operated by a person whose driving privilege is, *inter alia,* suspended, is faced with two options: immobilize the vehicle in place or, if it poses public safety concerns, have it towed and stored at an impound lot."). Where an unlicensed driver parks illegally or pulls into a place that impedes the flow of traffic, an officer may have the vehicle towed in the interest of public safety. ***Id.***

In the instant case, it is clear that the traffic stop remained ongoing when Detective Caterino ordered the occupants out of the vehicle. Detective

Caterino stopped the vehicle on suspicion of Driving Without a License.[2] Moreover, the driver stopped the car in an illegal parking spot and none of the occupants, including Appellant, possessed a valid driver's license. N.T., 4/30/15, at 11. Because none of the vehicles occupants could legally move the vehicle to a proper spot, Detective Caterino properly elected to have the vehicle towed in the interest of public safety. In order to tow the vehicle, Detective Caterino had to order the occupants out of the vehicle so that it could be safely towed.

All of the steps taken by Detective Caterino, including calling for a tow truck and ordering the passengers out of the vehicle so that it could be towed, were "tasks tied to the traffic infraction[.]" **Rodriguez, supra** at 1614. Moreover, there was no evidence to suggest that Detective Caterino had concluded the traffic stop before asking the Appellant to exit the vehicle because Detective Caterino had not issued a citation, told the occupants that they were free to leave, or otherwise signaled the end of the stop.

Based on the foregoing, we conclude that Appellant was ordered to exit the vehicle during a valid and ongoing traffic stop. As Appellant's entire argument is premised on his assumption that the traffic stop terminated prior to being ordered out of the vehicle, Appellant is not entitled to relief on

---

[2] 75 Pa.C.S. § 1501(a).

his claim.[3]    Accordingly, we affirm the trial court's October 15, 2015 Judgment of Sentence.

Judgment of Sentenced affirmed.  Jurisdiction relinquished.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date:  8/4/2016

---

[3] Moreover, Appellant does not argue that all of his behavior that morning, when considered together, did not give rise to a reasonable suspicion of criminal activity.