J-S28021-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DEVON DAUSJAY MIMS CARTER | |
| Appellant | No. 1270 WDA 2016 |

Appeal from the PCRA Order September 13, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0016495-2013

BEFORE:  OLSON, J., MOULTON, J., and STRASSBURGER, J.*

MEMORANDUM BY MOULTON, J.:            FILED:  OCTOBER 23, 2017

Devon Dausjay Mims Carter appeals from the September 13, 2016 order[1] entered in the Allegheny County Court of Common Pleas dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46.  We affirm.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] In his August 24, 2016 notice of appeal, Mims Carter purports to appeal from the PCRA court's order dated August 16, 2016 and entered August 17, 2016, notifying him of the court's intent to dismiss his petition. Order of Court, 8/17/16.  This order was not a final, appealable order. However, on September 13, 2016, the PCRA court entered an order dismissing Mims Carter's petition without a hearing.  Order of Court, 9/13/16.  Therefore, we will treat the instant appeal as filed from the September 13, 2016 order.  See Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

On direct appeal, this Court adopted the trial court's summary of the factual history of this matter as follows:

Officer Josh Alfer of the McKeesport Police Department, a police officer with nine years' experience, testified that he was on patrol duty on October 29, 2013. At 2:30 a.m., he made a traffic stop on a gold Pontiac Sunfire for failing to signal prior to making a left turn. [Mims Carter] was seated in the front passenger seat of the car, and a female was the driver. Officer Alfer radioed the traffic stop into dispatch, and Officer Bryan Easter responded as back-up.

Officer Alfer observed [Mims Carter] leaning forward in his seat, reaching towards his right side pocket in between his hip and the door. Officer Alfer instructed all occupants of the car to keep their hands where he could see them. [Mims Carter] originally complied with the officer's instruction, but later reached down towards his right side, out of the view of the officer. Officer Alfer testified that the area in which the car was stopped was a high crime area with a history of violent crimes including numerous shootings. When [Mims Carter] was again asked to show his hands, Officer Alfer observed that [Mims Carter]'s breathing was increased, and [Mims Carter] began to look from right to left in what the officer described as a nervous motion. Officer Alfer testified that, due to [Mims Carter]'s movements within the vehicle, and the officer's concern that [Mims Carter] may have a firearm on his person, Officer Alfer instructed [Mims Carter] and the female driver to exit the vehicle.

Officer Alfer observed [Mims Carter] exit the vehicle and saw Officer Easter begin a pat-down search of [Mims Carter]. As Officer Easter approached [Mims Carter]'s right front pocket, [Mims Carter] immediately began to pull away and a struggle ensued between [Mims Carter] and Officer Easter. Officer Alfer came around the car to assist. He instructed [Mims Carter] to stop moving. When [Mims Carter] failed to comply, Officer Alfer discharged his Taser and [Mims Carter] was subsequently handcuffed.

Officer Easter also testified to his encounter with [Mims Carter]. Officer Easter testified that, as he approached the

vehicle, [Mims Carter] kept looking over his shoulder to see where the officer was. Officer Easter observed [Mims Carter] move his shoulder and reach towards the right side of his body near his waistband, pocket area. [Mims Carter]'s hands were not in plain view at that time. After Officer Alfer asked the driver to exit the vehicle, Officer Easter also asked [Mims Carter] to exit the car. [Mims Carter] was directed to face the vehicle and place his hands behind his head, interlocking his fingers. [Mims Carter] put his hands on his head but did not interlock his fingers.

Officer Easter began a pat down of [Mims Carter] for weapons. As the officer brought his hand down toward [Mims Carter]'s right pocket area, [Mims Carter] immediately started to spin away from the officer. Officer Easter felt something in [Mims Carter]'s pocket, but did not know at that time what it was. [Mims Carter] kept trying to break away from Officer Easter, who instructed him to stop or he would be tased. [Mims Carter] did not comply and Officer Alfer deployed his Taser. After [Mims Carter] had been handcuffed, Officer Easter searched [Mims Carter] incident to arrest and recovered from [Mims Carter]'s right pocket a white plastic grocery bag containing numerous packets of heroin.

Commonwealth v. Mims-Carter, No. 536 WDA 2015, unpublished mem. at 1-3 (Pa.Super. filed April 14, 2016) (quoting Trial Ct. Op., 5/29/15, at 3-4).

On June 20, 2014, Mims Carter filed a motion to suppress the physical evidence. On February 19, 2015, following a hearing, the trial court denied the motion. The matter immediately proceeded to a stipulated non-jury trial. The trial court found Mims Carter guilty of possession with intent to deliver a controlled substance (heroin) ("PWID"), three counts of possession

of a controlled substance (heroin), possession of drug paraphernalia, and resisting arrest.[2]   On February 27, 2015, for the PWID conviction, the trial court sentenced Mims Carter to a term of 11 months and 15 days to 23 months' incarceration, as well as 3 years' probation, with credit for 443 days served.   The trial court did not impose a further penalty for Mims Carter's remaining convictions.   Accordingly, the trial court ordered Mims Carter released on parole.

On March 27, 2015, Mims Carter filed a notice of appeal.   On April 14, 2016, this court affirmed Mims Carter's judgment of sentence.   On April 22, 2016, Mims Carter filed a pro se PCRA petition.   The PCRA court appointed counsel, and Mims Carter filed an amended PCRA petition on June 6, 2016. On August 15, 2016, the Commonwealth filed an answer to the petition.   On August 17, 2016, the PCRA court filed a notice of intent to dismiss Mims Carter's petition.   On September 13, 2016, the PCRA court entered an order dismissing Mims Carter's petition without a hearing.   Mims Carter timely appealed to this Court.

Mims Carter's sole issue on appeal is:   "Whether the trial court erred in dismissing [Mims Carter]'s Petition and finding counsel was effective where trial counsel waived a suppression challenge to this search when the record

_____

[2] 35 P.S. §§ 780-113(a)(3), (a)(16), (a)(32), and 18 Pa.C.S. § 5104, respectively.

- 4 -

shows that the police lacked reasonable suspicion to support a second detention after the traffic stop concluded?" Mims Carter's Br. at 3.

Our standard of review from the denial of PCRA relief "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." Commonwealth v. Ousley, 21 A.3d 1238, 1242 (Pa.Super. 2011). Furthermore,

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error.
>
> This Court may affirm a PCRA court's decision on any grounds if the record supports it. We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Further, where the petitioner raises questions of law, our standard of review is de novo and our scope of review is plenary.

Commonwealth v. Rykard, 55 A.3d 1177, 1183 (Pa.Super. 2012) (quotation and internal citations omitted).

When analyzing claims for ineffective assistance of counsel, we begin with the presumption that counsel was effective. Commonwealth v. Spotz, 18 A.3d 244, 259-60 (Pa. 2011). "[T]he defendant bears the burden of proving ineffectiveness." Commonwealth v. Ligons, 971 A.2d 1125, 1137 (Pa. 2009). To overcome the presumption of effectiveness, a PCRA petitioner must demonstrate that: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3)

the petitioner suffered actual prejudice as a result. If a petitioner fails to prove any of these prongs, his claim fails." Commonwealth v. Spotz, 84 A.3d 294, 311 (Pa. 2014) (internal quotation and citations omitted).

Mims Carter claims that trial counsel was ineffective for failing to assert in the suppression motion that the evidence was the fruit of an illegal seizure.[3] Specifically, Mims Carter's underlying claim is that the police lacked reasonable suspicion for a subsequent investigatory detention of Mims Carter following the end of the initial traffic stop.

This Court has previously stated that, for his safety, an officer conducting a valid traffic stop has the absolute authority to order the occupants of a vehicle to alight, even absent reasonable suspicion of criminal activity. Commonwealth v. Palmer, 145 A.3d 170, 173 (Pa.Super. 2016). However, this right is extinguished once the primary traffic stop has concluded. Id. "The matter of when a traffic stop has concluded or otherwise given way to a new interaction does not lend itself to a 'bright[-]line' definition." Commonwealth v. Reppert, 814 A.2d 1196, 1202 (Pa.Super. 2002). We have observed:

---

[3] At the suppression hearing, Mims Carter's counsel conceded that "the police officers had the right to have my client get out, pat him down for their . . . safety and for anyone else's safety." N.T., 2/19/15, at 35. Counsel argued that the officers' search, pursuant to Terry v. Ohio, 392 U.S. 1 (1968), only allowed them to search for weapons and did not serve as a pretext to search for contraband. See N.T., 2/19/15, at 35.

> The United States Supreme Court has held that authority for a seizure pursuant to a traffic stop ends "when tasks tied to the traffic infraction are—or reasonably should have been—completed." Rodriguez v. United States, –––U.S. ––––, 135 S.Ct. 1609, 1614, 191 L.Ed.2d 492 (2015). Applying this principle, this Court's analysis . . . has turned on whether the purpose of the traffic stop was accomplished prior to ordering occupants out of the vehicle, and whether the occupants had previously been issued citations or told that they were free to leave.

Palmer, 145 A.3d at 173.

At the suppression hearing, Officer Alfer testified that, prior to asking the occupants of the vehicle to exit, he handed back the driver's cards and information and explained why she had been stopped. N.T., 2/19/15, at 19-20. He also testified that he had not issued a citation to the driver at the time he handed back her cards and information. Id. at 23. Officer Alfer said that Carter's movements during the course of his returning the driver's information had made him concerned that there might be a firearm in the vehicle. Id. at 20. Therefore, the officers asked Mims Carter and the driver to exit the vehicle. Because the "tasks tied to the traffic infraction" were not completed,[4] we conclude that the traffic stop had not

_____

[4] Officer Alfer's testimony that handing back the driver's information indicated the end of the stop, see N.T., 2/19/15, at 20, does not change our analysis, because by that time his reasonable concern for his safety had already arisen.

ended and, at the time they asked the vehicle's occupants to alight, the officers retained authority for a seizure pursuant to the stop.[5]

Because the initial traffic stop had not concluded, Carter's underlying claim that he was subject to a second seizure unsupported by reasonable suspicion lacks merit. Therefore, the PCRA court appropriately dismissed his petition.[6]

Order affirmed.

_____

[5] We note that Officer Easter's pat-down of Carter, prior to arrest, was supported by reasonable suspicion. An officer may conduct a Terry frisk of an individual he is investigating if he has a reasonable belief that the individual is armed and dangerous to the officer or others. Commonwealth v. Gray, 896 A.2d 601, 605-06 (Pa.Super. 2006). "In determining whether a Terry frisk was supported by a sufficient articulable basis, we examine the totality of the circumstances." Id. at 606. "[N]ervous behavior is a relevant factor, [but] nervousness alone is not dispositive and must be viewed in the totality of the circumstances." Id. at 606 n.7.

The totality of the circumstances supports a Terry frisk because the stop occurred at night in a high crime area, N.T., 2/19/15, at 7-8, Carter appeared nervous, was breathing heavily, appeared to be looking around for Officer Easter's location, was making movements towards his right side, id. at 6-8, 26, and had disobeyed a request to keep his hands visible, id. at 7. See Commonwealth v. Wilson, 927 A.2d 279, 284-85 (Pa.Super. 2007) (concluding that Terry frisk to ensure officer safety was justified where defendant made suspicious gestures and movements in conjunction with placing hands inside coat pocket as if defendant was reaching for something).

[6] We may affirm the PCRA court's decision on any grounds if supported by the record. See Rykard, 55 A.3d at 1183.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  10/23/17