J-S53030-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| PADRAIC COUGHLIN | |
| Appellee | No. 3492 EDA 2016 |

Appeal from the Order October 11, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011139-2015

BEFORE:  BENDER, P.J.E., OLSON, J. and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                **FILED NOVEMBER 15, 2017**

Appellant, the Commonwealth of Pennsylvania (Commonwealth), appeals from an order entered on October 11, 2016 in the Criminal Division of the Court of Common Pleas of Philadelphia County that suppressed evidence recovered following a warrantless search of the residence of Padraic Coughlin (Appellee), as well as statements made by Appellee following his arrest.  We affirm.

On August 30, 2015, following reports that he discharged a firearm at his Philadelphia residence, Appellee was arrested and charged with carrying a firearm without a license in violation of the Uniform Firearms Act (VUFA), 18 Pa.C.S.A. § 6106, possessing instruments of crime (PIC), 18 Pa.C.S.A. § 907, and recklessly endangering another person, 18 Pa.C.S.A. § 2705. The VUFA charge was later quashed.  Thereafter, Appellee filed a motion to

suppress and the trial court convened a hearing on October 11, 2016. The

court summarized the evidenced adduced at the hearing as follows:

According to the testimony of Commonwealth witness Police Officer Paul Sulock, on August 30, 2015 at approximately 9:20 p.m., Officer Sulock together with his partner [] responded to a radio call for a possible shooting [along] East Madison Street in the City and County of Philadelphia. As Officer Sulock pulled up to [] East Madison Street, two white females and a younger white male flagged them down. One of the white females, Jessica Cupps, told Officer Sulock that there was a white male, dressed in all black, by the name of Pat, appearing "crazy," and shooting an assault rifle in the back of the property.

Officer Sulock and Officer Rebstock[] went to the back of Ms. Cupps' property [along] East Madison Street to obtain access to [the] East Madison Street [property] where the alleged shooting was reported to have occurred. When Officer Sulock got to the back of Ms. Cupps' property, he observed a seven (7) foot high cement wall separating the back yard[s of adjoining East Madison Street properties.] While Officer Rebstock gave Officer Sulock protective cover, Officer Sulock straddled the wall, shone a flashlight into the back yard of [Appellee's] East Madison Street [residence], noticed bullet casings, and [Appellee] came out of the door at a fast pace. Officer Sulock drew his weapon, ordered [Appellee] to the ground, [Appellee] immediately complied, and Officer Sulock promptly placed [Appellee] in handcuffs. Officer Sulock noted that [Appellee] was "very compliant" with all of his commands. Once [Appellee] was on the ground in handcuffs, Officer Sulock[] began to question [Appellee] without advising him of his [rights pursuant to *Miranda v. Arizona* 384 U.S. 436 (1966). Specifically, Officer Sulock asked Appellee if he had a gun on his person and whether anyone else was inside the property. Appellee responded that he did not have a weapon but was inconsistent as to whether others were present inside his residence. Initially, Appellee stated there was someone inside the residence. When asked whether there was an injured party inside the home, Appellee responded that there was no one in the house. Appellee then indicated that there might be someone inside the home.] At this point, there were approximately four (4) or five (5) officers on the scene while Officer Sulock stood in the back yard. At no

point did Officer Sulock hear or see evidence that anyone else was in [Appellee's] home. Notwithstanding the above, Officer Sulock[, together with his partner and at least two other officers, entered the property, swept the first and second floors, and recovered a black assault rifle from the second floor.]

Trial Court Opinion, 1/6/17, at 1-2 (internal citations and footnotes omitted).

At the conclusion of the suppression hearing, the trial court granted Appellee's motion to suppress. Specifically, the court concluded that the rifle recovered from Appellee's residence should be suppressed since the Commonwealth failed to show that exigent circumstances justified a warrantless entry into the home. *See id*. at 7. The court also determined that any statements made by Appellee after Officer Sulock placed him in handcuffs were inadmissible because Appellee did not receive *Miranda* warnings before questioning commenced. *Id*.

The Commonwealth filed a timely interlocutory appeal on November 11, 2016, certifying that the ruling issued by the trial court would terminate or substantially handicap the prosecution in this case. Notice of Appeal, 11/8/16; Pa.R.A.P. 311(d) (permitting interlocutory Commonwealth appeal in criminal cases where notice certifies that challenged order will terminate or substantially handicap prosecution). On the same date, the Commonwealth also filed a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). This matter is now ripe for our review.

In its brief, the Commonwealth raises the following issue for our review:

Did the [trial] court err by suppressing a firearm found during a protective sweep where – after speaking to a next door neighbor

who said [Appellee] was shooting an assault rifle – police observed fired bullet casings, saw [Appellee] quickly leave the premises, and upon asking [Appellee] if anyone was inside, received inconsistent answers.

Commonwealth's Brief at 3.

The Commonwealth challenges an order suppressing evidence recovered during a warrantless search of Appellee's home. Its position on appeal is that the trial court erred as a matter of law in failing to find that exigent circumstances justified Officer Sulock's entry into Appellee's home without a warrant. According to the Commonwealth, there were urgent and immediate grounds for officers to enter Appellee's residence without a warrant because of the potential need to neutralize an ongoing threat or render emergency aide to an injured party. To support its claim, the Commonwealth points out that reliable eyewitnesses informed officers that Appellee was "crazy" and had discharged an assault rifle, police observed multiple shell casings in Appellee's back yard, and Appellee made inconsistent remarks about whether other individuals were present in his home.

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Evans*, 153 A.3d 323, 327 (Pa. Super. 2016) (citation omitted). Our standard of review in addressing a challenge to a trial court's order granting a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions

drawn from those facts are correct. *See Commonwealth v. Champney*, 161 A.3d 265, 271 (Pa. Super. 2017) (citation omitted). "Where the [trial] court's factual findings are supported by the record, we are bound by these findings and may reverse only if the [trial] court's legal conclusions are erroneous." *Commonwealth v. Palmer*, 145 A.3d 170, 173 (Pa. Super. 2016) (citation omitted). "[O]ur scope of review is limited to the factual findings and legal conclusions of the [trial] court." *In re L.J.*, 79 A.3d 1073, 1080 (Pa. 2013) (citation omitted) (noting that evidence elicited at trial falls outside the scope of review). "When the Commonwealth appeals from a suppression order, we . . . consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted." *Commonwealth v. Young*, 162 A.3d 524, 527 (Pa. Super. 2017) (citation omitted).

The substantive scope of search and seizure law begins with the Fourth Amendment, which provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Applying this provision to a warrantless police entry into a home, this Court has previously said:

It is axiomatic that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." **Welsh v. Wisconsin**, 466 U.S. 740 (1984) (*quoting* **United States v. United States District Court**, 407 U.S. 297 (1972)). Accordingly, the Supreme Court of the United States has long recognized that "searches and seizures inside a home without a warrant are presumptively unreasonable." [**Welsh**, 466 U.S.] at 749 (*quoting* **Payton v. New York**, 445 U.S. 573, 586 (1980)).

Accordingly, "[a]bsent probable cause and exigent circumstances, the entry of a home without a warrant is prohibited under the Fourth Amendment." **Commonwealth v. Roland**, 637 A.2d 269, 270 (Pa. 1994). In determining whether exigent circumstances exist, the following factors are to be considered:

> (1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, *i.e.*, whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified.

*Id*. at 270–271 (*quoting* **Commonwealth v. Wagner**, 406 A.2d 1026, 1031 (Pa. 1979)). We may also consider "whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or a danger to police or other persons inside or outside the dwelling." *Id*. at 271. When considering these factors, we must remain cognizant that "police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." *Id*. (*quoting* **Welsh**, 466 U.S. at 749-750).

**Commonwealth v. Wadell**, 61 A.3d 198, 210-211 (Pa. Super. 2012).

Based upon our review of the certified record and pertinent case law, including the factors that should be considered in determining whether

exigent circumstances are present, we conclude that the trial court did not err in granting Appellee's motion to suppress the rifle recovered during a warrantless search of his residence. In particular, we conclude, under the circumstances of this case, that the trial court acted within its discretion in refusing to credit Officer Sulock's plausible, but unsubstantiated, contention that he entered Appellee's home because he believed that an injured person may have been present.

Here, the record reveals that Officer Sulock and his partner responded to a radio call indicating that shots had been fired along East Madison Street. Three eyewitnesses met the officers as they arrived on scene. One of the witnesses, a white female, stated that a lone white male named Pat, who was dressed in black, had fired an assault rifle in the rear of his property. Upon entering the backyard of the East Madison Street property, Officer Sulock observed several shell casings on the ground. Shortly thereafter, an individual matching the description of the suspect emerged from the residence. Officer Sulock promptly subdued the individual and placed him in handcuffs. Officer Sulock entered the premises without a warrant after the suspect gave inconsistent responses when asked whether anyone else was present inside the home.

Application of the relevant factors listed above leads us to conclude that the Commonwealth failed to demonstrate that exigent circumstances were present. Although the crimes under investigation were serious and

there were substantial grounds to believe that Appellee was armed previously, the facts show that Appellee was under custodial arrest before officers entered his residence without a warrant. Thus, while there may have been ample grounds for finding probable cause to initiate a search, we need not consider whether the suspect remained within the premises or whether there was a likelihood of escape. In addition, although the facts reveal that entry was accomplished in a peaceful manner, it was undertaken at night, which militates against the Commonwealth's claim of exigent circumstances. *See Commonwealth v. Berkheimer*, 57 A.3d 171, 178-179 (Pa. Super. 2013).

In support of Officer Sulock's actions, the Commonwealth emphasizes Appellee's inconsistent responses to questions concerning the presence of third parties within his residence. We are not persuaded, however, that Appellee's statements compel a finding of exigent circumstances. The officers here responded to a call stating that an individual had discharged a firearm in his backyard. They did not receive a report that the suspect had targeted others, that injured persons were at the scene, or that anyone was present within the suspect's home. Upon arrival, the officers observed shell casings[1] on the ground outside Appellee's residence but did not observe

_____

[1] The presence of the shell casings supports the claims made by the eyewitnesses but do not provide compelling grounds to conclude that an
*(Footnote Continued Next Page)*

blood, hear screams, or see anyone inside Appellee's home. On the record before us, we hold that the trial court acted within its discretion in refusing to credit Officer Sulock's contention that he entered Appellee's residence without a warrant in order to render emergency assistance to an injured individual. Accordingly, we affirm the order granting Appellee's motion to suppress.

Order affirmed. Case remanded for further proceedings. Jurisdiction relinquished.

Bender, P.J.E., joins this memorandum.

Ford Elliott, P.J.E., files a dissenting memorandum statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2017

(Footnote Continued) ―――――――――

injured party remained inside Appellee's home, given all of the surrounding circumstances in this case.