J-A25032-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHELLE LEE HARRIS | : | |
| | : | |
| Appellant | : | No. 1128 WDA 2021 |

Appeal from the Judgment of Sentence Entered August 23, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0003130-2020

BEFORE: KUNSELMAN, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED: NOVEMBER 29, 2022**

Michelle Lee Harris (Appellant) appeals from the judgment of sentence entered in the Allegheny Court of Common Pleas. At the conclusion of a stipulated non-jury trial, the court convicted her of possession of a controlled substance, driving an unregistered vehicle, operation of a motor vehicle without required financial responsibility, operation of a vehicle without official certificate of inspection, and operation of a motor vehicle without emission inspection certificate.[1] Appellant contends the trial court erred when it denied her pretrial motion to suppress evidence, alleging: (1) the inventory search and impoundment of her car were improper; and (2) even if the search was permissible, the digital scale found in her vehicle did not support a finding that

_____

[1] 18 Pa.C.S. § 780-113(a)(16); 75 Pa.C.S. §§ 1301(a), 1786(f), 4703(a), 4706(c)(5).

the police officer possessed probable cause to arrest and search her person.

For the reasons below, we affirm.

We glean the facts of the underlying incident from the trial court opinion:

On September 10, 2019, [at approximately 2:17 a.m.,] Officer Jason Braun of the City of Pittsburgh Bureau of Police conducted a traffic stop of a vehicle operated by [Appellant] because the license plate and registration of the vehicle were expired. The stop occurred in the intersection of North Braddock Avenue and Hamilton Avenue in the City of Pittsburgh. Officer Braun approached the driver's side of the vehicle and addressed [Appellant]. [She] immediately became argumentative with Officer Braun. Because the vehicle was parked in the intersection and was impeding traffic and because the vehicle had an expired registration and license plate, Officer Braun made the determination that [Appellant] could not continue to drive the vehicle. He determined that the vehicle would have to be towed from the scene. [Appellant] exited the vehicle and began to walk away from the scene of the traffic stop.

After requesting a tow, Officer Braun conducted an inventory search of the vehicle. A black pocket scale with white residue was recovered from an area next to the center console. Pursuant to Officer Braun's training and experience, he believed the scale and white powder indicated that the scale had been used for weighing drugs. Immediately upon discovering the scale, Officer Braun informed [Pittsburgh Detective] G[i]no Macioce of the discovery of the scale and he requested [Detective] Macioce to arrest [Appellant]. [Detective] Macioce then approached [Appellant, who] was passively resistant, but . . . eventually placed under arrest for possession of drug paraphernalia[2] and transported from the scene in a police vehicle.

After [Appellant] was removed from the police vehicle, a police officer located two crack pipes in a compartment of the police cruiser that transported her. After a search incident to arrest was conducted, a small amount of crack cocaine was located in [Appellant's] jacket pocket.

---

[2] 35 P.S. § 780-113(a)(32).

Trial Ct. Op., 6/19/22, at 1-2 (paragraph breaks inserted); N.T. Supp. H'rg, 4/28/21, at 35. Relevant to Appellant's argument, Officer Braun stated that at the time of the incident, he was at "the beginning of [his] career" as a police officer and at the time of the September 2019 hearing, he had been an officer for two years and had conducted "[a]pproximately 12" traffic stops. N.T. Supp. H'rg at 34-35, 44-45.

In addition to possession of drug paraphernalia, Appellant was also charged with prohibited offensive weapons, resisting arrest, possession of a controlled substance, possession of a small amount of marijuana, driving an unregistered vehicle, operation of a motor vehicle without required financial responsibility, operation of a vehicle without official certificate of inspection, and operation of a motor vehicle without emission inspection certificate.[3]

On December 31, 2020, Appellant filed an omnibus pretrial motion seeking to suppress evidence found in her car and on her person obtained as a result of two purportedly illegal searches. Appellant's Omnibus Pre-Trial Motion for Suppression of Evidence and for Writ of *Habeas Corpus*, 12/31/20, at 5-9. Appellant specifically argued: (1) the search of her car was an improper inventory search, and as such, anything recovered during that search must be suppressed; and (2) her subsequent arrest was not supported by probable cause, and thus all evidence found incident to that search must also be suppressed. *Id.*

_____

[3] 18 Pa.C.S. §§ 908(a), 5104; 35 P.S. § 780-113(a)(31).

On April 28, 2021, the trial court held a suppression hearing where the Commonwealth presented the testimony of Officer Braun and Detective Macioce as summarized above.[4]  Appellant did not present any evidence.  On August 19, 2021, the trial court denied Appellant's motion to suppress.

This case proceeded to a stipulated non-jury trial on August 23, 2021, where the trial court found Appellant guilty of possession of a controlled substance, driving an unregistered vehicle, operation of a motor vehicle without required financial responsibility, operation of a vehicle without official certificate of inspection, and operation of a motor vehicle without emission inspection certificate, and not guilty of the remaining charges.  That same day, Appellant was sentenced to a two-year term of probation for possession of a controlled substance, and no further penalty for the remaining offenses. This timely appeal follows.[5]

Appellant raises the following claims:

Did the [trial court] err in denying Appellant's pretrial motion to suppress physical evidence, given that[:]

(A) the warrantless inventory search of her car was improper, given that immobilization rather than impoundment of her car was

_____

[4] In its brief, the Commonwealth stated it conferred with Appellant's counsel who "indicated that he [would] be filing a petition to supplement the certified record to include bodycam videos marked at trial as Commonwealth Exhibit 1."  Commonwealth Brief at 12 n.2.  Upon our review of the record, this petition has not been filed at the trial court level or in this Court.  This, however, does not impact our review.

[5] Appellant complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

called for, with immobilization being an action for which an inventory search is not permitted; and

(B) even if a warrantless inventory search of Appellant's car was permissible, what was discovered during that search (a portable food scale having white residue on it) was not an object permitting Appellant's arrest for the crime of Possession of Drug Paraphernalia (thus making the search incident to arrest exception to the warrant requirement inapplicable to her case)?

Appellant's Brief at 3 (paragraph breaks inserted).

Our review of a trial court's order denying a pretrial motion to suppress is guided by the following:

[O]ur standard of review . . . is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

**Commonwealth v. Yandamuri**, 159 A.3d 503, 516 (Pa. 2017) (citations & footnote omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." **Commonwealth v. Gallagher**, 896 A.2d 583, 585 (Pa. Super. 2006) (citation omitted).

Preliminarily, it merits mention that in her first argument, Appellant does not challenge the validity of the traffic stop or Officer Braun's determination that she could not "drive away" in her vehicle due to its expired registration. Appellant's Brief at 22-23. Rather, she argues that the police

- 5 -

did not have proper justification to seize and search her vehicle after the traffic stop. *Id.* at 21. Appellant contends the impoundment of her car was not necessary, thus making the warrantless inventory search of her car unlawful. *Id.* at 23. Appellant insists that even though her car was illegally parked after the traffic stop, she should "have been permitted to move her car to a legal parking space, at which time it could have been immobilized, thereby obviating the need for an inventory search." *Id.* at 27. Appellant points out that she "did not decide to stop her car on her own[,]" but stopped "where she was instructed to" do so. *Id.* at 28 (emphasis omitted). Appellant maintains that by following Officer Braun's order to stop, any danger her vehicle posed to incoming traffic was a police-created exigency, and as such, did not justify a warrantless search. *Id.* In support of her argument, Appellant relies on *Commonwealth v. Lagenella*, 83 A.3d 94 (Pa. 2013), and distinguishes *Commonwealth v. Palmer*, 145 A.3d 170 (Pa. Super. 2016).

"The Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution, protect individuals from unreasonable searches and seizures." *Lagenella*, 83 A.3d at 102. To conduct an investigatory search, police must first obtain a warrant. *Id.* "[H]owever, there are certain exceptions to the warrant requirement[,]" one of them being an inventory search. *Id.*

> The purpose of an inventory search is not to uncover criminal evidence, but to safeguard items taken into police custody in order to benefit both the police and the defendant. In

> the seminal case of [**South Dakota v.**] **Opperman**, [428 U.S. 364 (1976)], the high Court observed that inventory searches of impounded vehicles serve several purposes, including (1) protection of the owner's property while it remains in police custody; (2) protection of the police against claims or disputes over lost or stolen property; (3) protection of the police from potential danger; and (4) assisting the police in determining whether the vehicle was stolen and then abandoned.
>
> An inventory search of an automobile is permissible when (1) the police have lawfully impounded the vehicle; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle.

**Lagenella**, 83 A.3d at 102 (some citations omitted).

As such, we must first address Appellant's contention that the police officers should have immobilized her car, rather than impound it. Officer Braun initiated the traffic stop when he saw Appellant was driving a vehicle with expired registration, a violation of Section 1301 of the Pennsylvania Motor Vehicle Code (MVC). Section 1301 states that "[n]o person shall drive or move and no owner or motor carrier shall knowingly permit to be driven or moved upon any highway any vehicle which is not registered in this Commonwealth unless the vehicle is exempt from registration. 75 Pa.C.S. § 1301(a). Consequently, the officer made the decision to impound the car pursuant to Section 6309.2 of the MVC. "Section 6309.2 provides different procedures for when a vehicle is immobilized, versus when it is impounded (or towed and stored)." **Commonwealth v. Peak**, 230 A.3d 1220, 1226 (Pa. Super. 2020).

Section 6309.2(a)(2) provides, in relevant part:

> If a motor vehicle . . . for which there is no valid registration or for which the registration is suspended, as verified by an appropriate law enforcement officer, is operated on a highway or trafficway of this Commonwealth, the law enforcement officer shall immobilize the motor vehicle . . . or, in the **interest of public safety**, **direct that the vehicle be towed and stored by the appropriate towing and storing agent** . . . and the appropriate judicial authority shall be so notified.

75 Pa.C.S. § 6309.2(a)(2) (emphasis added). This Court has previously stated: "Judges are not in a position to second-guess a police officer's decision to tow a vehicle which, in the officer's opinion, may create a traffic hazard. To do so would seriously handicap legitimate traffic-control activities." *Commonwealth v. Henley*, 909 A.2d 352, 364 (Pa. Super. 2006) (citation omitted).

In *Lagenella*, which Appellant relies on, the defendant was subject to a traffic stop after failing to use a turn signal. *Lagenella*, 83 A.3d at 96. When the defendant stopped his car, it was not blocking traffic. *Id.* The officer realized during the interaction that the defendant "did not have the required emissions sticker" and his license was suspended. *Id.* The officer decided to tow the vehicle due to the defendant's suspended license and then, pursuant to police policy, conducted an inventory search. *Id.* at 96-97. During the search, the officer located an eyeglasses case containing marijuana seeds, narcotics residue, and a box-cutter. *Id.* at 97. The officer also found weapons in the trunk. *Id.* The defendant filed a motion to suppress the physical evidence found in his car, arguing, *inter alia,* the officer "lacked

authority to tow his vehicle pursuant to [Section] 6309.2 because the vehicle did not present an issue of public safety." *Id.*

During the suppression hearing, the officer "offered no testimony indicating that [the defendant]'s vehicle posed an issue of public safety, . . . there was no broken glass around the vehicle, and the parked vehicle was not impeding the flow of traffic in any manner." *Lagenella*, 83 A.3d at 101-02. Additionally, there were "no items of value in plain view in the vehicle." *Id.* at 102. The trial court granted the motion regarding the drugs found in the eyeglasses case, but denied the motion regarding the weapons. *Id.* The trial court subsequently convicted the defendant of receiving stolen property and unlawful possession of a firearm. *Id.*

On appeal, the defendant argued Section 6309.2 "allows for the towing of a vehicle only if there is an issue of public safety," which was not present based on the circumstances. *Lagenella*, 83 A.3d at 98. A panel of this Court affirmed the defendant's sentence, determining the stop was valid and the officer properly immobilized the vehicle. *Id.* The defendant filed a petition for allowance to appeal to the Pennsylvania Supreme Court. *Id.*

The Supreme Court reversed this Court's determination, stating: "[B]ased on our review of the record, the Commonwealth failed to introduce any evidence that [the officer]'s decision to tow [the defendant]'s vehicle was based on public safety. Thus, . . . the Superior Court's holding that [the officer] engaged in a proper inventory search of [the defendant]'s vehicle was erroneous." *Lagenella*, 83 A.3d at 102 (footnote omitted). The Court

concluded that since there was no "legal basis" for the officer to tow the defendant's car, the inventory search was "improper," and "evidence of the weapons found in the trunk . . . should have been suppressed." *Id.* at 106 (footnote omitted).

Here, Officer Braun testified that he made the decision to tow Appellant's vehicle "being illegally parked" where the car "was forward of the stop line impeding the intersection." N.T. Supp. H'rg at 37. Detective Macioce testified that the location of the car was a "concern" because there was a fire station across the street it would have been difficult for "fire trucks to get in and out of there [as well as] Port Authority buses that have to make those turns." *Id.* at 31-32. The detective further stated: "Where the vehicle was parked at, I don't believe that a large vehicle would be able to safely make a right turn without going into the oncoming lane of traffic either straight away or to the right. That's why vehicles can't be parked that close to the intersection." *Id.* at 32. He also indicated that the "flow of traffic" would have been "impeded." *Id.*

Based on this testimony, the trial court concluded the impoundment and inventory search of Appellant's car were legal, opining:

> Officer Braun clearly testified that the registration and license plate of [Appellant's] vehicle was expired. The vehicle could not be driven from the scene and it was stopped in a public intersection blocking the flow of traffic. Additionally, the vehicle would have been illegally parked if it had remained in the intersection. Based on these facts, [the trial court] believes that Officer Braun acted within the law in conducting an inventory search and on having the vehicle towed from the scene.

Trial Ct. Op. at 3. We agree.

As mentioned above, Appellant does not contest that her vehicle's registration was expired or that police were justified in initiating a traffic stop. Instead, she insists she should have been allowed to move her vehicle to a legal parking spot due to a police-created exigency. *See* Appellant's Brief at 28. We reject this argument. Appellant seems to suggest that the police must anticipate where and how a vehicle will park or that police should follow a vehicle until it approaches a parking space before initiating a traffic stop. *See id.* She offers no authority suggesting this is a reasonable request in any fashion. Further, she asserts, without citation, she must have been allowed the opportunity to move her vehicle into a legal parking spot. Contrary to her argument, without valid registration, Appellant was not permitted to "drive or **move**" her car "upon any highway."[6] *See* 75 Pa.C.S. § 1301(a). Because Appellant's vehicle was violating a parking ordinance, thereby jeopardizing public safety (notably by preventing fire trucks from navigating the road), the trial court's conclusion – that towing her car was necessary, thereby justifying

_____

[6] The Vehicle Code defines "highway" as follows:

> The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel. The term includes a roadway open to the use of the public for vehicular travel on grounds of a college or university or public or private school or public or historical park.

75 Pa.C.S. § 102.

an inventory search − is supported by the record.  *See* 75 Pa.C.S. § 6309.2(a)(2); *Yandamuri*, 159 A.3d at 516; *Lagenella*, 83 A.3d at 102-03. Moreover, we reiterate that judges are not in a position to second-guess an officer's decision to tow a car that may create a traffic hazard.  *See Henley*, 909 A.2d at 364.

Relevant to Appellant's argument, we now examine *Palmer*, as she contends that this case was not applicable.  *See* Appellant's Brief at 27.  In *Palmer*, the officer was driving when he spotted the defendant, who he knew from prior interactions, in a vehicle with two other occupants.  *Palmer* 145 A.3d at 171.  The officer also recognized the driver, who he knew did not possess a valid driver's license, and initiated a traffic stop.  *Id.*  During the stop, the defendant did not comply with the officer's request to keep his hands visible, and instead "kept putting his hands in his pockets or down near the side of his legs."  *Id.*  The vehicle was located in an illegal parking space and the officer determined that since none of the occupants had a valid driver's license, he needed to arrange for the car to be towed.  *Id.*  The officer asked the defendant and the two other occupants to exit the vehicle.  *Id.*  The defendant exited and "became very nervous[.]"  *Id.*  Due to the defendant's nervous demeanor, his initial non-compliance with instructions, and his "repeated reaching movements[,]" the officer searched him and found heroin and a firearm.  *Id.*

The defendant filed a motion to suppress, arguing "because the traffic stop had ended before [he] was ordered to exit the vehicle, police lacked

- 12 -

reasonable suspicion to justify the frisk[,]" which the trial court denied. *Palmer*, 145 A.3d at 172. After a stipulated bench trial, the defendant was convicted of, *inter alia*, carrying a firearm without a license. He then appealed to this Court, arguing the traffic stop concluded prior to his exit from the vehicle and the trial court erred in denying his motion to suppress when it considered impermissible factors to justify the officer's search. *Id.* at 172-73. This Court affirmed the trial court's decision and determined: (1) none of the occupants had a valid driver's license, and as such none of them could legally move the vehicle; (2) towing the vehicle was necessary because it was in an illegal parking space; and (3) that because towing was necessary, the traffic stop was ongoing after the defendant and the other occupants left the vehicle, making the search of the defendant legal. *Id.* at 173-74. Referencing *Lagenella*, the *Palmer* Court stated: "Where an unlicensed driver parks illegally or pulls into a place that impedes the flow of traffic, an officer may have the vehicle towed in the interest of public safety." *Palmer*, 145 A.3d at 174 (citation omitted).

Regarding Appellant's assertion that the present facts are analogous with *Lagenella* instead of *Palmer*, we disagree. Unlike *Lagenella*, here, there was evidence that Appellant's vehicle was an impediment to public safety, thereby justifying the impoundment. Moreover, similar to *Palmer*, Appellant was unable to legally move her vehicle that was improperly parked. *See* 75 Pa.C.S. § 1301(a) (no person shall drive a vehicle upon a highway in the Commonwealth that is not registered); 75 Pa.C.S. § 6309.2(a)(2) (when

a vehicle does not have valid registration and is operated on a highway in the Commonwealth, an officer "shall immobilize the motor vehicle . . . or, in the interest of public safety, direct that the vehicle be towed . . ."); *see also Palmer*, 145 A.3d at 173-74. Since the vehicle was in an illegal parking spot and impeding the roadway, Officer Braun determined it posed a safety risk and properly arranged to tow the car, making the inventory search valid. *See* 75 Pa.C.S. § 6309.2(a)(2); *Lagenella*, 83 A.3d at 102-03.[7]

Accordingly, Appellant's first claim has no merit as the trial court properly found that there was evidence to support the officer's decision to tow

_____

[7] We also find guidance from this Court's decision in *Peak*, *supra*. In *Peak*, an officer stopped the defendant's vehicle at a gas station after the defendant stopped it in the middle of an intersection and eventually made a left turn without using a turn signal. *Peak*, 230 A.3d at 1222. The officer determined during the stop that the defendant had a suspended license and advised him that the car would be towed. *Id.* at 1222-23. The defendant allegedly stated during the stop that his mother was coming to move the vehicle out of the illegal parking spot. *Id.* at 1223. During an inventory search, the officer located narcotics and placed him under arrest. *Id.*

The defendant filed a motion to suppress the physical evidence, which the trial court denied. *Peak*, 230 A.3d at 1223. The trial court then found the defendant guilty of multiple narcotics and traffic violations. *Id.* The defendant filed a notice of appeal to this Court, arguing towing the vehicle was unnecessary because it was stopped on private property and not causing concern for public safety, making the subsequent inventory search illegal. *Id.* at 1224. This Court affirmed the trial court's decision, stating: (1) the officer reasonably called to tow the vehicle where it was blocking a gas pump and "impeding the business' right to do business[;]" (2) the phrase "in the interest of public safety" encompasses when a vehicle is obstructing a gas pump *Id.* at 1227. Like *Peak*, one could also infer that Appellant's car obstructed the Port Authority buses from conducting business by impeding their routes.

her car because it created a public safety hazard; and therefore, the inventory search was permissible.

In Appellant's second argument, she claims that even if the impoundment and inventory search of her car were proper, there was no probable cause to support her warrantless arrest. Appellant's Brief at 32-33. Appellant contends that Officer Braun's discovery of a simple portable scale did not justify arresting her, and thus the search of her person was improper. *Id.* at 30-31. Appellant maintains that portable kitchen scales, like the one found in her car, "are legally permissible objects" and the unspecified amount of "white residue" on it did not support a finding of probable cause. *Id.* at 34, 40-41. Further, she avers such an object cannot be presumed to be drug paraphernalia unless "accompanied by other items associated with drug trafficking, such as razor blades, plastic baggies, police scanners, and large amounts of cash[.]" *Id.* at 35, *citing* **Commonwealth v. Kelly**, 409 A.2d 21 (Pa. 1979). Relying on **Kelly**, Appellant avers that because her behavior was "inconsistent with criminal activity" and Officer Braun only suspected that the scale was contraband, its discovery did not rise to probable cause for arrest. *Id.* at 35-38. Appellant also argues that because Officer Braun was an unseasoned police officer at the time of the incident, his "inexperience suggests the absence of probable cause, not its existence." *Id.* at 38-39. Appellant insists that because her arrest was not supported by probable cause, the subsequent search was illegal and the evidence the officers seized – namely the crack cocaine – should be suppressed. Appellant's Brief at 33.

Keeping our standard of review in mind, we note that the scale was discovered during the inventory search. We reiterate that an inventory search is valid where an officer has "lawfully impounded" a vehicle after determining it posed a risk to public safety. *Lagenella*, 83 A.3d at 102-03. To determine if an inventory search is reasonable, we look to the following:

> An inventory search is reasonable if it is conducted pursuant to reasonable standard police procedures and in good faith and not for the sole purpose of investigation.
>
> A protective vehicle search conducted in accordance with standard police department procedures assures that "the intrusion [is] limited in scope to the extent necessary to carry out the caretaking function."

*Lagenella*, 83 A.3d at 102-03 (citations omitted).

Moreover, an officer may effectuate a warrantless arrest when they have probable cause to believe a criminal offense has been committed. *Commonwealth v. Galendez*, 27 A.3d 1042, 1046 (Pa. Super. 2011). This Court has previously stated:

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the [stop], and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

*Commonwealth v. Bozeman*, 205 A.3d 1264, 1277 (Pa. Super. 2019) (emphasis and citation omitted).

- 16 -

After determining certain evidence supports an individual's arrest, the officer may conduct a search of their person:

> The search incident to arrest exception allows "arresting officers, in order to prevent the arrestee from obtaining a weapon or destroying evidence, [to] search both the person arrested and the area within his immediate control." Moreover . . . the search incident to arrest exception applies categorically. In other words, the search incident to arrest exception permits a search of the arrestee's person as a matter of course — and without a "case-by-case adjudication . . . [of] whether a search of a particular arrestee is likely to protect officer safety or evidence."

*Commonwealth v. Simonson*, 148 A.3d 792, 799 (Pa. Super. 2016) (citations omitted). Further, "in all cases of lawful arrests, police may fully search the person incident to the arrest." *Commonwealth v. Lutz*, 270 A.3d 571, 579-80 (Pa. Super. 2022).

Relevant to Appellant's argument, we analyze the facts of *Kelly*. In *Kelly*, police initiated a traffic stop of the defendant's vehicle for having an expired inspection sticker. *Kelly*, 409 A.2d at 22. The defendant and his two passengers exited the car while one of the officers looked at the front seat to ensure there were no weapons present. *Id.* The officer saw a small prescription vial which bared a drugstore label with the defendant's name on it that "appeared to contain aluminum foil packets" and seized the item. *Id.* The defendant opened the vial and determined there were nine aluminum packets inside. *Id.* The defendant was arrested and taken to the police station where officers determined the packets contained methamphetamine. *Id.* at 22-23.

The defendant argued, *inter alia*, the evidence seized and his arrest were illegal. The trial court denied his petition and he appealed to this Court. **See Commonwealth v. Kelly**, 378 A.2d 484, 484 (Pa. Super. 1977). This Court affirmed the decision, stating the officers properly stopped the defendant and searched his vehicle. **Id.** The defendant then filed a petition for allocatur with the Pennsylvania Supreme Court, arguing the officers lacked probable cause to seize the vial and effectuate arrest. **Kelly**, 409 A.2d at 23. The Supreme Court agreed, reaching the "narrow holding that mere sight of the vial . . . under the circumstances here . . . did not fulfill the probable cause requirement" because there was nothing "immediately apparent" about the item to demonstrate illegal activity to the officers. **Id.**

We find that **Kelly** is distinguishable from the present facts. In **Kelly**, the officers observed a prescription vial branded with a drugstore label which had the defendant's name on it. Inside of the vial were aluminum packets, which gave no indication of their contents. Further, the items in the vial could have reasonably been in the legal possession of the defendant since the vial had an official label on it bearing his name. Here, Appellant was in possession of a portable scale with white residue on it, found in a pocket next to the driver's seat of her vehicle. Based on Officer Braun's training and experience, he knew that a "scale with white residue" on it was "used for the purchase and distribution of illegal drugs." N.T. Supp. H'rg at 39; **see also Kelly**, 409 A.3d at 23.

Further, the trial court concluded Officer Braun "clearly" had probable cause to believe Appellant possessed drug paraphernalia and stated the standard was "easily satisfied." Trial Ct. Op. at 4-5. The record supports this conclusion. Officer Braun did not need to prove beyond a reasonable doubt that Appellant was in possession of drug paraphernalia, but only that, considering the totality of the circumstances, that there was a "probability" of criminal activity. *See Bozeman*, 205 A.3d at 1277. Appellant's argument largely ignores the fact that Officer Braun found a portable scale with "white residue" on it in the pocket next to the center console of the driver's seat. *See* Appellant's Brief at 30-41. Within the context in which the officer located the scale, he could reasonably deduce it was not an instrument that one would normally find in a car. The trial court found the officer's testimony, that he suspected illegal activity based on the scale with white residue, credible. *See Gallagher*, 896 A.2d at 585. Further, we reject Appellant's argument that Officer Braun's short career at the time of the incident "suggests the absence of probable cause[.]" *See* Appellant's Brief at 38-39. While an officer's experience, or lack thereof, may be a **factor** in a probable cause determination, it is not the only aspect on which a court should rest its decision. Officer Braun's experience and training dictated to him that the presence of white residue on a portable scale demonstrated the probability of criminal activity. *See* N.T. Supp. H'rg, at 39. The record supports the trial court's conclusion that the officers' possessed probable cause to arrest Appellant and the subsequent search of her person was legal. *See*

*Simonson*, 148 A.3d at 799; *Bozeman*, 205 A.3d at 1277. Therefore, Appellant's second claim is without merit, and no relief is due.

Judgement of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/29/2022