OPINION BY McLAUGHLIN, J.:
The Commonwealth appeals from the order entered on November 8, 2017, which granted Michael P. Dunham's motion to suppress physical evidence discarded by him as he fled the scene of a lawful traffic stop.[1] We conclude that Dunham was lawfully seized when police initiated the stop of the vehicle in which Dunham was a *275 passenger, and therefore, no further commands or instructions by police were required to detain Dunham at the scene. Accordingly, we reverse and remand for further proceedings.
The suppression court found the following facts:
On April 13, 2017, officers with the York City Police Department initiated a traffic stop upon observing a light blue Mazda minivan abruptly changing lanes and perceiving the vehicle to be traveling at an unsafe speed. Prior to the minivan coming to a complete stop, one (1) of the three (3) passengers fled from the passenger side of the vehicle on foot.[2 ]
During the foot pursuit, which involved numerous police officers, [Dunham] ran through multiple properties and jumped various fences before being apprehended in the backyard of a residential property. While engaged in the pursuit, [Dunham] discarded a black and silver Taurus PT 111 G2 9mm [h]andgun and a small bag of marijuana [that] were later recovered by police.
Suppression Court Order and Opinion, filed November 8, 2018, at 2. In addition, the court credited the following testimony from Officer Chuck Crumpton:
I don't remember specifically saying anything directly to [Dunham]. I typically do in foot pursuits yell, police, stop. I do recall though that I was on the radio advising officers in the area that I was involved in a foot pursuit from this traffic stop, giving out a description of [Dunham], what he was wearing, the direction of travel and so forth.
Id. at 5 (quoting N.T. at 20).[3] Based on this testimony, the court found that "no commands were given to [Dunham]" directing him to stop his flight and return to the minivan. Id.
Dunham was arrested and charged with firearm violations, as well as possession of marijuana.[4] In July 2017, he filed an omnibus pretrial motion, asserting violations of his constitutional rights against unreasonable search and seizure and seeking suppression of the firearm and marijuana. See Omnibus Motion, 07/21/2017. According to Dunham, police had unlawfully pursued him for some unknown reason, and therefore, police had coerced him into discarding the contraband. Id. at 2 (unpaginated).
In September 2017, the suppression court conducted a hearing, during which the Commonwealth presented testimony from two police officers involved in Dunham's arrest. At the close of testimony, the court recognized a narrow issue to be decided: "whether the officers had a basis to detain the backseat passenger of the vehicle that they were stopping for a traffic stop when that passenger ran from the police." N.T. at 29. In support of its position, the Commonwealth cited Commonwealth v. Pratt , 930 A.2d 561 (Pa.Super. 2007), asserting that "police officers [may] control all movement in a traffic encounter." N.T. at 28. The court granted Dunham additional time to respond to the Commonwealth's argument and granted the Commonwealth "an opportunity to supplement what they have provided today as well as respond to anything provided by *276 [counsel for Dunham]." Id. at 29-30. Dunham timely filed a memorandum in support of his motion. See Suppression Ct. Order and Op. at 3. The Commonwealth offered no further analysis.
In November 2017, the suppression court granted Dunham's motion. Id. at 1, 6. The Commonwealth timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement, seeking to preserve three issues: (1) whether police had express authority to detain and/or pursue Dunham pursuant to Pratt ; (2) whether the suppression court had erred in creating a new requirement that police must issue a verbal command prior to pursuit; and (3) whether the court erred in finding police issued no commands during the incident. See Commonwealth's Pa.R.A.P. 1925(b) Statement, 12/26/2017. In response, the court issued a statement directing our attention to its prior order and opinion.
On appeal, the Commonwealth raises the following issues, which we have restated for clarity:
I. Did the suppression court err in suppressing the evidence obtained by police which was discarded by [Dunham] during the course of police pursuit for lack of reasonable suspicion or probable cause on the sole basis that the police may or may not have issued a verbal command to stop where [Dunham] was a passenger in a vehicle lawfully detained by police in a traffic stop supported by probable cause and therefore was, himself, lawfully detained prior to the police pursuit?
II. Did the suppression court err in suppressing the evidence obtained by police which was discarded by [Dunham] during the course of police pursuit for lack of reasonable suspicion or probable cause to detain [Dunham] on the sole basis that the police may or may not have issued a verbal command to stop where [Dunham], having no reason to believe that the officers suspected him of committing a crime, engaged in an unprovoked headlong flight in a high crime area which gave officers the requisite level of suspicion to pursue?
III. Did the suppression court err in suppressing the evidence obtained by police which was discarded by [Dunham] during the course of police pursuit for lack of reasonable suspicion or probable cause to detain [Dunham] on the sole basis that the police may or may not have issued a verbal command to stop where, pursuant to relevant case law, the police had the authority to control the movement of [Dunham] as a passenger in a lawful motor vehicle stop?
See Commonwealth's Brief at 4-5 (suggested answers omitted).
Initially, as noted by Dunham, the Commonwealth has not properly preserved its second issue for review. According to the Commonwealth, suppression was not appropriate because officers possessed reasonable suspicion to pursue Dunham where his unprovoked flight occurred in a high crime area. Commonwealth's Br. at 18-21 (citing, inter alia , In re D.M. , 566 Pa. 445, 781 A.2d 1161, 1164 (2001) ("[U]nprovoked flight in a high crime area is sufficient to create a reasonable suspicion to justify a Terry stop under the Fourth Amendment") ). However, the Commonwealth did not assert this before the suppression court, nor did it otherwise preserve this issue for appeal. Accordingly, we deem it waived. See Pa.R.Crim.P 581(H) ("The Commonwealth shall have the burden of ... establishing that the challenged evidence was not obtained in violation of the defendant's rights."); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."), 1925(b)(4)(vii) ("Issues not included in the Statement and/or not *277 raised in accordance with the provisions of this paragraph (b)(4) are waived.").
Absent waiver, we note further that this claim lacks merit. The police had initiated a lawful traffic stop of the vehicle in which Dunham was a passenger; thus, Dunham was seized prior to his flight from police. See Pratt , 930 A.2d at 563 ("A forcible stop of a motor vehicle by a police officer constitutes a seizure of a driver and the occupants.").[5]
Dunham suggests, on the same grounds, that the Commonwealth has waived its first issue-i.e. , whether suppression was warranted where Dunham fled the scene of a lawful traffic stop. However, we disagree. In our view, the Commonwealth's first and third issues are sufficiently related and properly preserved. We shall address them concurrently.
According to the Commonwealth, and as conceded by Dunham, police had probable cause to conduct a traffic stop of the vehicle in which Dunham was a passenger. See Commonwealth's Br. at 15-17. In light of the circumstances surrounding the stop, the Commonwealth suggests, a reasonable person would have believed that he was not free to leave. Id. at 17-18 (citing Commonwealth v. Livingstone , 174 A.3d 609 (Pa. 2017) ), 23. Further, under these circumstances, the Commonwealth asserts that well-established precedent, which recognizes the authority of police officers to verbally direct the movement of all persons during a lawful traffic stop, does not impose upon officers an obligation to invoke this authority with verbal commands. Id. at 21-23 (citing Commonwealth v. Brown , 439 Pa.Super. 516, 654 A.2d 1096 (1995) ; Pratt , supra ). Rather, as the forcible stop of a motor vehicle constitutes a seizure of a driver and passengers, no verbal commands proscribing Dunham's flight were necessary. Id. at 18, 23. Thus, the Commonwealth concludes, it was appropriate for police to pursue Dunham when he fled. Id. at 15-17, 23.
In his response, Dunham concedes that this Court's holding in Pratt recognizes police authority "to control all movement during a traffic stop." Dunham's Br. at 14. Nevertheless, Dunham asserts police must provide a passenger with "actual notice" that he must remain where he is. Id. According to Dunham, in contrast to the driver of an automobile stopped by police, who likely has some reasonable expectation that his or her conduct has led to the traffic stop, a passenger will not necessarily have the same expectation. Id. at 14-17. Thus, Dunham suggests, a verbal command is required. Id. at 17 (citing in support Maryland v. Wilson , 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) ).
Our scope and standard of review are well settled:
In reviewing an appeal by the Commonwealth of a suppression order, we may consider only the evidence from the appellee's witnesses along with the Commonwealth's evidence which remains uncontroverted. Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain de novo review over the suppression court's legal conclusions.
Commonwealth v. Brown , 606 Pa. 198, 996 A.2d 473, 476 (2010) (citation omitted). Further, where supported by the record, a suppression court's findings of fact are binding on this Court, whereas its conclusions of law are not, because our "duty ... is to determine if the suppression court properly applied the law to the facts."
*278 Commonwealth v. Coughlin , 199 A.3d 401, 403, 2018 WL 5961092, at *2 (Pa. Super. 2018) (en banc ) (citations omitted).
Dunham sought suppression of the evidence based on the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution.
[These provisions] protect[ ] individuals from unreasonable searches and seizures, thereby insuring the right of each individual to be let alone. Evidence obtained from an unreasonable search or seizure is inadmissible at trial. To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive.
The first of these [interactions] is a 'mere encounter' (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an 'investigative detention' must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or 'custodial detention' must be supported by probable cause.
A forcible stop of a motor vehicle by a police officer constitutes a seizure of a driver and the occupants; this seizure triggers the protections of the Fourth Amendment. An officer is permitted to stop a motor vehicle to investigate a vehicle code violation which he or she observed.
Pratt , 930 A.2d at 563 (formatting modified; internal citations omitted).
Generally, in the context of a suppression motion, we address a suspect's flight from police by examining whether police had at least reasonable suspicion necessary for an investigative stop.
Under Pennsylvania law, any items abandoned by an individual under pursuit are considered fruits of a seizure. Those items may only be received in evidence when an officer, before giving chase, has at least the reasonable suspicion necessary for an investigatory stop.
Stated another way, when one is unconstitutionally seized by the police, i.e. without reasonable suspicion or probable cause, any subsequent flight with the police in pursuit continues the seizure and any contraband discarded during the pursuit is considered a product of coercion and is not admissible against the individual.
Commonwealth v. Taggart , 997 A.2d 1189, 1193 (Pa.Super. 2010) (citation omitted).
Thus, where such reasonable suspicion exists, we shall not suppress contraband discarded by a suspect during his flight. See, e.g. , In re D.M. , 781 A.2d at 1164-65 (declining to suppress firearm upon finding reasonable suspicion where tip accurately described suspect's gender, race, and clothing and where suspect fled upon police-initiated interaction). As a corollary to this general rule, unprovoked flight from police in a high-crime area is sufficient to create reasonable suspicion for police pursuit and will not warrant suppression. See, e.g. , Commonwealth v. Jefferson , 853 A.2d 404, 405-07 (Pa.Super. 2004) (declining to suppress narcotics where suspect fled unprovoked from marked patrol car in high-crime area). On the other hand, flight alone is insufficient. Thus, where police otherwise lack reasonable suspicion of criminal conduct, items abandoned by an individual during pursuit will not be admissible in any subsequent criminal prosecution. See, e.g. , *279 In re M.D. , 781 A.2d 192, 200 (Pa.Super. 2001) (suppressing narcotics discarded by defendant during flight from police where pursuit initiated based on partial description of a robbery suspect).
Additional considerations complicate this straightforward analysis. To be lawful, a traffic stop must be supported by facts sufficient to provide an officer with probable cause to believe that the vehicle or driver was in violation of a provision of the vehicle code or, alternatively, reasonable suspicion, where a stop would serve some investigatory purpose. Commonwealth v. Feczko , 10 A.3d 1285, 1291 (Pa.Super. 2010) (en banc ); 75 Pa.C.S.A. § 6308(b). Justification for the stop will in most cases derive from the conduct of the driver; thus, no particular level of suspicion usually originates with a vehicle's passengers. Nevertheless, we recognize that any forcible traffic stop works as a seizure of all vehicle occupants . Pratt , 930 A.2d at 563.
The United States Supreme Court has long recognized the inherent danger police officers face in making a traffic stop. Pennsylvania v. Mimms , 434 U.S. 106, 110, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) ("[I]t appears that a significant percentage of murders of police officers occurs when the officers are making traffic stops."). This danger increases where a driver is accompanied by passengers. See Wilson , 519 U.S. at 413, 117 S.Ct. 882 ("[T]he fact that there is more than one occupant of the vehicle increases the possible sources of harm to the officer."). In order to ensure police officer safety, therefore, it is now well settled in Pennsylvania that an officer may direct the movements of a driver and all passengers for the duration of a traffic stop. Pratt , 930 A.2d at 564-68 (discussing evolution of police authority in cases from jurisdictions across the country and noting further those few cases refusing to follow this settled rule have not been followed consistently).
What directions are constitutionally appropriate to ensure officer safety is necessarily dependent upon the particular circumstances facing a police officer during a traffic stop. See Mimms , 434 U.S. 106, 108-09, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) ("The touchstone of our analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.") (quoting Terry v. Ohio , 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ).
In Mimms , for example, the United States Supreme Court concluded that a police officer conducting a lawful traffic stop may order the driver to get out of the car. Mimms , 434 U.S. at 111, 98 S.Ct. 330 ; see also Wilson , 519 U.S. at 415, 117 S.Ct. 882 (extending Mimms to passengers of a lawfully stopped car in recognition of the greater danger presented). In Pratt , this Court extended the rule, holding that an officer may order passengers in a lawfully stopped vehicle to remain inside or get back into the vehicle. Pratt , 930 A.2d at 565. Indeed, recognizing that "traffic stops today present the same, if not greater, safety concerns for police officers than [previously]," this Court has concluded that it is "reasonable and justifiable" to empower police officers to "eliminate the possibility of a passenger, who has an obvious connection to the vehicle's driver, from distracting or otherwise interfering with an officer engaged in a traffic stop." Id. at 567-68.
The police officer's exercise of authority represents a de minimis intrusion upon the liberty interests of the driver and passengers. See, e.g. , Mimms , 434 U.S. at 111, 98 S.Ct. 330 (describing an officer's direction as "at most a mere inconvenience").
*280 In light of these considerations, it is therefore not surprising that the United States Supreme Court and this Court have acknowledged that police officers engaged in a lawful traffic stop may exercise control over the movements of a vehicle's passengers absent the usual requirements reasonable suspicion or probable cause. Wilson , 519 U.S. at 414-15, 117 S.Ct. 882 ; Mimms , 434 U.S. at 110-11, 98 S.Ct. 330 ; Pratt , 930 A.2d at 567.
Distilling these considerations to their simplest form, we summarize as follows. On one hand, pursuit of an individual by police requires at least reasonable suspicion of criminal conduct. In re D.M. ; Jefferson . On the other, however, a lawful traffic stop constitutes a seizure of all occupants of the vehicle for the duration of the stop, with no additional, particularized suspicion required. Wilson ; Mimms ; Pratt .
For the following reasons, we find the Commonwealth's position persuasive. First, the authority we have vested in a police officer to control the movements of a driver and all passengers during a traffic stop reflects our recognition that "the public interest in promoting the safety of police officers outweighs the marginal intrusion on personal liberty." Pratt , 930 A.2d at 567. Dunham's flight is not only an affront to the officer's authority in this case; it also demonstrates the precise danger we have striven to minimize. Wilson , 519 U.S. at 415, 117 S.Ct. 882 ; Pratt , 930 A.2d at 567-68.
Second, we reject Dunham's suggestion that an officer must provide "actual notice" of the authority he or she is compelled to assert. As noted by the Commonwealth, determining whether an individual has been seized requires us to consider the totality of the circumstances to ascertain whether a reasonable person would have believed that he is free to leave. Livingston e , 174 A.3d at 621. Regarding traffic stops, we have stated:
It is undeniable that emergency lights on police vehicles in this Commonwealth serve important safety purposes, including ensuring that the police vehicle is visible to traffic, and signaling to a stopped motorist that it is a police officer, as opposed to a potentially dangerous stranger, who is approaching. Moreover, we do not doubt that a reasonable person may recognize that a police officer might activate his vehicle's emergency lights for safety purposes, as opposed to a command to stop. Nevertheless, upon consideration of the realities of everyday life, particularly the relationship between ordinary citizens and law enforcement, we simply cannot pretend that a reasonable person, innocent of any crime, would not interpret the activation of emergency lights on a police vehicle as a signal that he or she is not free to leave.
Id. (internal citation omitted).
Here, the Commonwealth established that police "conducted a traffic stop using [their] emergency equipment, [their] lights and sirens." N.T. at 18. Based on this evidence, it is beyond question that a reasonable person would believe that he was not free to leave. Livingston e , 174 A.3d at 621. Indeed, this display of authority was actual notice more than sufficient to inform Dunham that he should remain with the vehicle. It is simply beyond argument that a passenger may not flee from the scene, regardless of whether police issue verbal commands overtly directing a passenger's movement. Thus, we need not hesitate in concluding that Dunham was seized lawfully, prior to his flight from the still-moving vehicle, and therefore, police pursuit of Dunham was merely a lawful continuation of that seizure.
*281 Finally, our conclusion is congruent with the aforementioned case law. These precedents permit an officer to issue verbal commands but do not require an officer to do so. See, e.g. , Pratt , 930 A.2d at 567 ("[A] police officer may lawfully order a passenger....") (emphasis added). Here, as a practical matter, it is not all clear that police had a reasonable opportunity to issue Dunham verbal commands directing his movement. To the contrary, in our view, Dunham's preemptive flight negated any opportunity for police to verbally exercise their authority. Under these circumstances, we decline to reward Dunham for his preemptive flight or, more generally, require that police issue additional, verbal commands to an individual, already lawfully seized, prior to their pursuit of him.
Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

The Commonwealth has certified that the suppression court's order will terminate or substantially handicap its prosecution of Dunham in this matter. See Commonwealth's Notice of Appeal, 12/01/2017; Pa.R.A.P. 311(d).

Officer Crumpton testified, "There [were] three individuals in the vehicle[:] a driver, a front seat passenger, and a rear seat passenger." Notes of Testimony (N.T.), 09/26/2017, at 17 (emphasis added).

On cross examination, Officer Crumpton reiterated that he was unsure whether he gave any commands to Dunham. See N.T. at 26 ("I typically do, but I can't tell you specifically what I said to [Dunham].").

See 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1) ; 35 P.S. § 780-113(a)(31)(i), respectively.

Dunham has never disputed that the traffic stop was lawful.