J-A18031-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                :            PENNSYLVANIA
                                :
              v.                :
                                :
                                :
                                :
JERWAHN LEE ATKINS              :
                                :
          Appellant             :    No. 955 WDA 2019

Appeal from the Judgment of Sentence Entered June 5, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0008566-2018

BEFORE:  BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED DECEMBER 23, 2020**

Appellant Jerwahn Lee Atkins appeals from the judgment of sentence imposed following his convictions for carrying a firearm without a license (VUFA) and escape.[1]  Appellant argues that the trial court erred by denying his suppression motion after police unlawfully detained him beyond the timeframe necessary to complete the initial traffic stop.  We affirm.

The trial court set forth the relevant facts as follows:

This matter arises out of [Appellant's] arrest during a traffic stop of a vehicle in which [Appellant] was a passenger.  The vehicle was stopped for a nonfunctioning taillight and the failure to have required insurance.  During the stop the officer[s] were concerned about [Appellant's] hand movements near his waistband.  As the vehicle could not be driven and was to be towed, the officers ordered each of the occupants out of the vehicle.  As [Appellant] was exiting the vehicle the officers were concerned about his behavior and instructed him to place his hands on the vehicle.  [Appellant] began to run and one of the officers grabbed at him

_____

[1] 18 Pa.C.S. §§ 6106(a)(1) and 5121(a), respectively.

as he ran and [Appellant's] shirt was pulled off and a gun dropped from his waistband. [Appellant] filed a motion to suppress alleging that the traffic stop had concluded at the time that [Appellant] was ordered from the vehicle and there was no reasonable suspicion or probable cause to further detain or search him.

At the suppression hearing[,] the Commonwealth presented the testimony of Officers Joshua Stinebaugh and Aaron Spangler of the City of Pittsburgh Police Department. Officer Stinebaugh testified that he and his training partner were on patrol in a marked vehicle on May 30, 2018, when they effectuated a traffic stop of a vehicle that had a burned out taillight. After running the plate, it was determined that the vehicle's license was suspended as a result of the cancellation of insurance. As the officers approached the vehicle[,] they noted that there were three occupants, with [Appellant] being seated in the right rear passenger's seat. Officer Stinebaugh testified that while Officer Spangler was checking the identification of the occupants of the vehicle[,] he noted [Appellant's] phone kept ringing or alerting and [Appellant] was repeatedly putting his hands in his pocket and wiping his palms on his thighs. Officer Stinebaugh testified that [Appellant's] movements made him nervous so he asked [Appellant] to stop reaching into his pockets and eventually told him to put his hands on the headrest of the seat in front of him.

However, [Appellant] kept reaching down around his waistband. Officer Spangler, after checking the occupants' identification, returned to the vehicle and ordered the occupants of the vehicle out of the vehicle as it was going to be towed. Stinebaugh testified that the occupants were ordered to exit the vehicle one at a time, with the driver first. When [Appellant] was instructed to exit the vehicle [Appellant] stated that the right rear passenger's door was broken so Officer Stinebaugh signaled to Officer Spangler that [Appellant] was coming out the rear driver side door. Officer Stinebaugh testified that when [Appellant] exited the vehicle: "I seen him take like a bladed stance as if he was about to take off. Officer Spangler took notice and tried to grab him, and that's when a struggle ensued. One thing [led] to another, his shirt came off, a gun fell and he took off."

Officer Stinebaugh testified that the gun fell from [Appellant's] waistband when the struggle ensued between Officer Spangler and [Appellant]. After the gun fell, Officer Spangler stood by the

gun and Officer Stinebaugh pursued [Appellant] and apprehended him.

On cross-examination[,] Officer Stinebaugh acknowledged that he was wearing a body camera and that he approached the vehicle on the passenger side and that his body camera captured his interaction with [Appellant]. He acknowledged that the body camera showed [Appellant's] left arm resting on his knee and that "throughout the video you see his arm come up sometimes" but that "[i]t comes up and goes down, yes." He also acknowledged that the video shows Officer Spangler speaking to the driver and informing him that "He's seizing the vehicle because nobody can drive it because the insurance is suspended." He also testified that the video shows [Appellant] asking Officer Spangler if he can get out of the car and that [Appellant] is told, "No, not yet." He also acknowledged that the video did not show him telling [Appellant] to take his hands away from his waist, to put his hands on the headrest or that the phone was ringing. Officer Stinebaugh testified that at 16:33:48 in the video it showed the initial point "where I told him to put his hands up" which he did, and then he dropped them, but he did not say anything about the headrest. He also acknowledged that at 16:34:54 the video shows [Appellant] beginning to flee.

The Commonwealth then called Officer [] Spangler who also testified concerning the reason for the traffic stop and testified that when he approached the vehicle he noted a strong odor of marijuana coming from the vehicle. He testified that Officer Stinebaugh informed him that

> the rear passenger was refusing to comply with some of the commands he giving was him, specifically about showing his hands and that he kept grabbing at his waistband and that Officer Stinebaugh told him a few times to keep his hands up on the front seat of the vehicle which he did not comply.

[Officer Spangler] testified that [the officers] indicated that they were going to remove the occupants from the vehicle and [Appellant] slid across that back seat to get out on the driver's side and,

> [a]s he was opening the door, I asked him to put his hands up in the vehicle. He slowly started to but then stopped, and he tensed up on me. That is why I went to grab him,

put his hands up. He immediately pulled his hands down, turned his stance away from me and started to flee in the opposite direction. I tried to my grasp arms around him. That day it was very hot. He actually slipped through my arms, and his whole T-shirt came off in my hands, which we preserved as evidence.

Officer Spangler also testified that as [Appellant] was running:

He was really grabbing at his waistband. I started yelling commands for him to stop. Like I said, I was in full uniform. At that time a black handgun fell out of his waistband and hit the ground.

Officer Spangler testified on cross-examination that the report prepared by Officer Stinebaugh indicated that he notified the occupants of the vehicle that he smelled marijuana and he believed that he had notified the driver of the vehicle that he smelled marijuana. He acknowledged, however, that at the point that he took the identification of the occupants of the vehicle his vehicle's dash camera did not record him stating that he smelled marijuana. He also acknowledged that the dash camera did not record Officer Stinebaugh telling him that [Appellant] was acting "nervous or fidgety" or that he told [Appellant] to keep his hands up or on the headrest although Officer Spangler testified that "I notified Officer Stinebaugh to keep a watch on the passenger twice." Spangler testified that the dash camera showed [Appellant] leaning over and asking "Can I get out of the vehicle" to which he responded "Not yet."

Trial Ct. Op., 12/17/19, 1-5 (some formatting altered, record citations omitted).

On March 14, 2019, the trial court denied Appellant's motion to suppress. Following a non-jury trial on June 5, 2019, the trial court convicted Appellant of VUFA and escape. That same day, the trial court sentenced Appellant to an aggregate term of two years' probation. Appellant filed a

timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement.[2] The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following issue:

Whether [Appellant] was subjected to an unlawful detention where, absent additional reasonable suspicion to believe that criminal activity was afoot, the police officers detained [Appellant] beyond the timeframe necessary to effectuate the purpose of the traffic stop, in violation of his rights under the Fourth and Fourteenth Amendments of the United States Constitution, and Article 1, Section 8 of the Pennsylvania Constitution?

Appellant's Brief at 4.

In challenging the trial court's suppression ruling, Appellant acknowledges that the initial traffic stop was lawful. *Id.* at 16. However, he asserts that the traffic stop ended when Officer Spangler informed the driver "that his vehicle would have to be impounded." *Id.* at 24. At that point, Appellant contends that "all tasks reasonably tied to the traffic infraction had been completed." *Id.* at 24. Therefore, he argues that "the officers' continued detention of [Appellant], a mere passenger, was unrelated to the purpose of the traffic stop," and therefore required reasonable suspicion. *Id.* at 24-25 (relying on *Commonwealth v. Reppert*, 814 A.2d 1196, 1202 (Pa. Super. 2002) (*en banc*)).

_____

[2] We note that, in his Rule 1925(b) statement, Appellant included an additional claim challenging the sufficiency of the evidence supporting his escape conviction. *See* Appellant's Rule 1925(b) Statement, 7/29/19, at 3. However, Appellant has abandoned this issue on appeal. *See Commonwealth v. Dunphy*, 20 A.3d 1215, 1218 (Pa. Super. 2011) (stating that issues raised in a Rule 1925(b) statement that are not developed in an appellate brief are abandoned).

Appellant claims that "unlike in [***Commonwealth v. Palmer***, 145 A.3d 170 (Pa. Super. 2016)], where the police officer ordered the occupants to exit the vehicle so that it could be safely towed, [Officer] Spangler specifically testified that he ordered [Appellant] and the other occupants out of the car so that he could search them." ***Id.*** at 24-25. Further, Appellant argues that "even if the police officers were permitted to refuse [Appellant's] request to exit the vehicle so that the tow could be carried out in an orderly fashion, their authority to continue to detain [Appellant] clearly ended once [Appellant exited] the vehicle." ***Id.*** In any event, Appellant argues that the police lacked reasonable suspicion and, therefore, the trial court erred in denying his motion to suppress. ***Id.*** at 27-35.

The Commonwealth responds that, "[c]ontrary to [A]ppellant's assertion, the vehicle stop had not ended at the moment the driver was taken out of the vehicle and patted down." Commonwealth's Brief at 6. The Commonwealth asserts that "[b]oth [A]ppellant and the front passenger were still in the vehicle and there is no indication that the driver had been issued his motor vehicle code violation citations." ***Id.*** The Commonwealth argues that the instant case is similar to the facts in ***Palmer***, in that "the interaction with the driver had not ended as the car had not yet been secured and towed and none of the occupants had been given the opportunity to remove personal items from the vehicle." ***Id.*** at 7. Further, the Commonwealth asserts that "this wasn't a situation of 'issue a citation and the driver is on his way.' This was a situation where the car was going to be towed and no citations had yet

been issued to the driver." *Id.* at 8. Under these circumstances, the Commonwealth contends that the traffic stop was still in progress and, therefore, the police officers were entitled to order the occupants out of the vehicle. *Id.*

The Commonwealth also argues that, even if the officers exceeded the purpose of the lawful traffic stop, they had reasonable suspicion to do so. *Id.* at 8-9. Therefore, the Commonwealth concludes that the trial court properly denied Appellant's motion to suppress.

In reviewing a challenge to a trial court's suppression ruling, our standard of review is limited to determining

> whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Green*, 168 A.3d 180, 183 (Pa. Super. 2017) (citation omitted). Further, "our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing."

*Commonwealth v. Rapak*, 138 A.3d 666, 670 (Pa. Super. 2016) (citation omitted).

This Court has explained that

officers conducting a valid traffic stop have an absolute right to ask the occupants of a vehicle to step out of the car for the duration of the traffic stop. "Our Supreme Court has recognized expressly that an officer conducting a valid traffic stop may order the occupants of a vehicle to alight to assure his own safety." [***Reppert***, 814 A.2d at 1202]. This is true even absent a reasonable suspicion that criminal activity is afoot.

This absolute right to order occupants out of a vehicle is limited in duration, however, and "[o]nce the primary traffic stop has concluded . . . the officer's authority to order either driver or occupant from the car is extinguished." ***Reppert***, [814 A.2d at] 1202. As this Court has recognized, "[t]he matter of when a traffic stop has concluded or otherwise given way to a new interaction does not lend itself to a 'brightline' [] definition." ***Id.***

The United States Supreme Court has held that authority for a seizure pursuant to a traffic stop ends "when tasks tied to the traffic infraction are—or reasonably should have been—completed." ***Rodriguez v. United States***, [575 U.S. 348, 349,] 135 S. Ct. 1609, 1614 . . . (2015). Applying this principle, this Court's analysis of similar cases has turned on whether the purpose of the traffic stop was accomplished prior to ordering occupants out of the vehicle, and whether the occupants had previously been issued citations or told that they were free to leave.

***Palmer***, 145 A.3d at 173 (some citations omitted, some formatting altered);

***see also Commonwealth v. Dunham***, 203 A.3d 272 (Pa. Super. 2019),

*appeal denied*, 217 A.3d 195 (Pa. 2019).

In ***Reppert***, this Court considered the scope of a traffic stop involving expired registration and inspection stickers. In that case, the Court concluded that once the driver was questioned and the officer accepted his explanation

for the expired stickers, the traffic stop ended. **Reppert**, 814 A.2d at 1203. Therefore, absent reasonable suspicion, the officer had no further reason to detain the driver or its occupants. **Id.**

In **Palmer**, this Court concluded that, where officers stop a vehicle that is operated by an unlicensed driver, "calling for a tow truck and ordering the passengers out of the vehicle so that it could be towed, were tasks tied to the traffic infraction." **Palmer**, 145 A.3d at 174 (citation and quotation marks omitted). Specifically, the Court reiterated that "[w]hen an officer determines that the driver of a vehicle does not have a valid driver's license, the tasks tied to the stop are not limited to simply issuing a citation." **Id.**; **see also** 75 Pa.C.S. § 6309.2(a)(1), (2) (requiring police to immobilize or tow a vehicle that is (1) operated by an unlicensed driver or (2) operated without valid registration). Therefore, the **Palmer** Court held that "officer[] had the authority, as part of the ongoing traffic stop, to order [the defendant] to exit the vehicle so that it could be towed." **Palmer**, 145 A.3d at 171.

Here, the trial court addressed Appellant's suppression claim as follows:

[Appellant] contends [that] the officers detained [him] beyond the time-frame necessary to effectuate the purpose of the traffic stop. However, the evidence herein clearly establishes that, unlike the factual scenario in **Reppert**, the traffic stop had not concluded when [Appellant] was ordered from the vehicle. The officers credibly testified that an odor of marijuana was detected in the vehicle and they were concerned about [Appellant's] hand movement as they were conducting the traffic stop. However, it is clear that they did not order [Appellant] out of the vehicle based on those observations. Instead, all of the occupants were instructed to exit the vehicle one at a time, which was clearly done

- 9 -

to control the encounter for the safety of the officers, [and] does not negate the fact that it was done as part of the traffic stop.

\* \* \*

In the present case[,] the officers were properly exercising control of [Appellant] as part of the traffic stop, which had not concluded. While the officers were cross examined extensively concerning their interactions with [Appellant] and the other occupants during the traffic stop as shown on the body camera and dash camera, their testimony credibly established that they had concerns about [Appellant's] actions while he was in the vehicle and as he was exiting the vehicle. **However, he was not ordered out of the vehicle based on those actions but because the vehicle was being towed.** As he exited the vehicle[,] both officers observed [Appellant] act as though he was about to flee. Officer Stinebaugh observed [Appellant] take what he called a "bladed stance" and Officer Spangler noted [Appellant's] refusal to continue to show his hands and that he acted as though he was about to flee. Not knowing what [Appellant's] intentions were Officer Spangler was justified in attempting to grab [Appellant] to control him. It was at this point that [Appellant] pulled away from Officer Spangler and ran and the gun in his possession fell from his waistband.

In the present case there was no evidence that the officers took any action against [Appellant] beyond that related to and as a direct result of the ongoing traffic stop and, therefore, the motion to suppress was appropriately denied.

Trial Ct. Op. at 8, 10 (emphasis added).

Based on our review of the record, we agree with the trial court that the traffic stop was still in progress when Officer Spangler ordered the occupants to alight from the vehicle. *See Green*, 168 A.3d at 183; *see also Palmer*, 145 A.3d at 173. As in *Palmer*, the police were required to either immobilize or tow the vehicle for a violation of Section 6309.2. *See Palmer*, 145 A.3d at 173; *see also* 75 Pa.C.S. § 6309.2(a)(2). Therefore, "towing the vehicle was a task tied to the traffic stop." *See Palmer*, 145 A.3d at 171.

Accordingly, because the traffic stop required further action by police, the officers were entitled to require all occupants to remain in the vehicle and then to exit the vehicle separately in order to ensure their safety. *See Dunham*, 203 A.3d at 279 (stating that, "[i]n to ensure police officer safety, therefore, it is now well settled in Pennsylvania that an officer may direct the movements of a driver and all passengers for the duration of a traffic stop" (citation omitted)). Accordingly, Officer Spangler did not need to establish reasonable suspicion in order to direct Appellant to exit the vehicle. *Palmer*, 145 A.3d at 173; *see also Dunham*, 203 A.3d at 279.

In light of our conclusion that the traffic stop was ongoing when Officer Spangler ordered Appellant to exit the vehicle, we do not address the parties' claims regarding reasonable suspicion. As noted by the trial court, Appellant was not ordered out of the vehicle based on his actions, but rather, because the vehicle was being towed. *See* Trial Ct. Op. at 9. Further, Appellant fled from the scene while the stop was in progress and before the police effectuated any type of search. *Id.* at 11. Therefore, Appellant is not entitled to relief. *See Dunham*, 203 A.3d at 278, 281 (reiterating that a valid motor vehicle stop "constitutes a seizure of a driver and the occupants," and that because the defendant was seized lawfully prior to his flight, "police pursuit of [the defendant] was merely a lawful continuation of that seizure" (citation omitted)). Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/23/2020</u>