J-S17014-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: COMMONWEALTH OF PENNSYLVANIA | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1711 EDA 2021 |

Appeal from the Order Entered July 22, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-JV-0000555-2021

BEFORE:  BOWES, J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY BOWES, J.:                    **FILED SEPTEMBER 20, 2022**

The Commonwealth of Pennsylvania ("Commonwealth") appeals from the order entered on July 22, 2021, in which the juvenile court granted J.G.'s motion to suppress physical evidence.  We reverse the juvenile court's suppression order and remand for further proceedings.

On May 12, 2021, at 7:00 p.m., Philadelphia police officers Mark Dial and Geovanie Castro-Baez were patrolling in the western part of the city when they observed a Honda Accord with an expired registration tag.  *See* N.T. Suppression Hearing, 7/22/21, at 8-9, 18-19.  The officers activated their patrol vehicle's lights and sirens to initiate a traffic stop.  *Id*. at 10.  The driver of the Accord pulled over to the side of the road and parked.  *Id*.  As Officers Dial and Castro-Baez approached the vehicle, they observed three passengers exit the vehicle.  *Id*.  One of the occupants, later identified as J.G.,

was holding a black jean jacket at his waist that appeared to contain an object. *Id*.

While the officers "were attempting to gather everyone back into the vehicle," J.G. fled. *Id*. at 10. After losing sight of J.G. for "maybe three seconds," J.G. reappeared without the jacket and Officer Dial was able to detain him. *Id*. at 10-11. While taking J.G. into custody, Officer Castro-Baez retraced J.G.'s flight path and recovered the black jean jacket from a trashcan that J.G. had passed while attempting to flee. *Id*. at 23. Wrapped in the jacket was a Glock .19 mm handgun. *Id*. J.G. was arrested and charged with carrying a firearm without a license, possessing a firearm as a minor, and carrying a firearm in public in Philadelphia.

J.G. filed a pre-trial motion to suppress the firearm, contending that the abandonment was coerced by the officers' illegal pursuit. *See* Omnibus Motion for Pre-Adjudicatory Relief, 6/8/21, at unnumbered 1-3. Since J.G. was not the operator of the vehicle and officers did not see him engage in any criminal activity, J.G. contended that they had no valid reason to pursue him. On July 22, 2021, the suppression court held a hearing on J.G.'s motion. At the hearing, Officers Dial and Castro-Baez testified, identifying J.G. and describing the vehicle stop, chase, and recovery of J.G.'s firearm. *See* Suppression Hearing, 7/22/21, at 9, 19-20.

At the conclusion of the hearing, the Commonwealth argued that the firearm was lawfully recovered because the officers had probable cause to stop

the vehicle due to the expired registration; therefore, they also had the right to control the vehicle occupants' movements for the duration of the traffic stop. *Id*. at 25. Trial counsel did not contest J.G.'s connection to the firearm, but instead alleged that the evidence should be suppressed because the abandonment was coerced by an illegal pursuit. *Id*. at 31-32. The suppression court granted the motion, finding that the Commonwealth failed to prove that J.G. possessed the firearm. *Id*. at 39-40. Additionally, the court found that the officers did not reliably identify J.G. at the hearing, since neither had requested that J.G. remove his COVID-19 mask at the time of identification. *Id*. This Commonwealth appeal followed.[1] The Commonwealth and the juvenile court both complied with the mandates of Pa.R.A.P. 1925.

The Commonwealth raises the following issue for our review:

Did the suppression court err in granting suppression when the Commonwealth showed that officers recovered a gun that [J.G.] had abandoned in the middle of a police chase after he fled from a lawful car stop, and where the court erroneously applied a legal standard unrelated to that for the suppression of evidence, made a factual conclusion contrary to the undisputed record, and granted suppression on a ground [J.G.] did not raise?

Commonwealth's brief at 7.

Our standard of review on such matters is well-settled:

---

[1] We properly assume appellate jurisdiction over this interlocutory appeal because the Commonwealth certified in its notice of appeal that the juvenile court's order of July 22, 2021 terminated or substantially handicapped the prosecution. *See* Pa.R.A.P. 311(d); *see also Commonwealth v. Shearer*, 882 A.2d 462, 466 (Pa. 2005).

- 3 -

> When the Commonwealth appeals from a suppression order, this Court follows a clearly defined scope and standard of review. We consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. This Court must first determine whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn from those findings. In appeals where there is no meaningful dispute of fact, as in the case *sub judice*, our duty is to determine whether the suppression court properly applied the law to the facts of the case.

*Commonwealth v. Arthur*, 62 A.3d 424, 427 (Pa.Super. 2013) (cleaned up).

"This Court may reverse only when the legal conclusions drawn from those facts are erroneous." *Commonwealth v. Collins*, 950 A.2d 1041, 1046 (Pa.Super. 2008) (*en banc*).

The Commonwealth contends that the suppression court applied an improper standard of review. *See* Commonwealth's brief at 13-14. At the suppression hearing, the court stated that the Commonwealth bore the burden of proving that "more likely than not that a crime ha[d] been committed and that [J.G.] was involved." N.T. Suppression Hearing, 7/22/21, at 35. Finding that the Commonwealth had not proven that J.G. possessed the firearm, the court granted suppression. *Id*. at 39-40. We agree with the Commonwealth's position that the suppression court erred in applying the incorrect burden of proof.

It is well-established that, at a suppression hearing, the Commonwealth bears the burden of "establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H). At the

conclusion of the hearing, the judge "shall enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute, and shall make an order granting or denying the relief sought." Pa.R.Crim.P. 581(I). Hence, during the suppression hearing, the Commonwealth was not tasked with proving that J.G. was engaged in criminal activity.[2] Herein, the suppression court did not consider whether the firearm was obtained in violation of J.G.'s rights. Instead, the suppression court engaged in an improper assessment of the relative strength of the Commonwealth's case. Nevertheless, the suppression court's error does not thwart our review since we are not bound by the suppression court's legal rulings. **Collins**, **supra** at 1046. Accordingly, we will proceed to consider whether the firearm was obtained in violation of J.G.'s rights.[3]

---

[2] To the extent that the suppression court's preoccupation with establishing J.G.'s connection to the firearm related to the court's unstated concern that the police lacked reasonable suspicion to initiate the pursuit, for the reasons we discuss *infra*, that concern is unwarranted.

[3] Additionally, the Commonwealth contended that the suppression court abused its discretion when it found that the Commonwealth had not adequately identified J.G. at the suppression hearing. **See** N.T. Suppression Hearing, 7/22/21, at 39-40. We find that this too amounted to an improper assessment of the sufficiency of the Commonwealth's evidence. Notably, this argument was raised *sua sponte* by the suppression court, since J.G. never argued that he was misidentified or even that the firearm did not belong to him. It is well-established that it is improper for a suppression court to litigate an issue and rule upon it in a defendant's favor where the defendant never raised the issue in any suppression motion, let alone with specificity and
*(Footnote Continued Next Page)*

Generally, items abandoned by an individual under pursuit by law enforcement are admissible where the officers, before giving chase, had the necessary level of suspicion to effectuate a valid stop. *See Commonwealth v. Taggart*, 997 A.2d 1189, 1193 (Pa.Super. 2010). In contrast, items discarded because of police pursuit that was unsupported by reasonable suspicion or probable cause is considered a product of coercion and is not admissible against the individual. *Id*. Therefore, we discern that the outcome of this appeal turns upon a determination of whether the actions of Officers Dial and Castro-Baez during the instant traffic stop were valid.

The United States Supreme Court "has long recognized the inherent dangers police officers face" when executing traffic stops. *Commonwealth v. Dunham*, 203 A.3d 272, 279 (Pa.Super. 2019) (citing to *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977)). Accordingly, while justification for a traffic stop typically derives solely from the conduct of the vehicle operator, we have long held that police officers possess the authority to direct the movement of all vehicle occupants for the duration of a traffic stop. *See Commonwealth v. Pratt*, 930 A.2d 561, 563 (Pa.Super. 2007) (finding that to maintain control and ensure safety, officers can control "all movement in a

particularity. *See Commonwealth v. Banks*, 165 A.3d 976, 980 (Pa.Super. 2017) (citing *Commonwealth v. Whiting*, 767 A.2d 1083, 1087-88 (Pa.Super. 2001)). Thus, to the extent the juvenile court granted the suppression motion on the grounds that J.G. was not definitively identified, we find that the court abused its discretion.

- 6 -

traffic encounter"). Thus, police pursuit of passengers who attempt to flee from an ongoing, lawful traffic stop is viewed as "merely a lawful continuation of that seizure." **Dunham**, **supra** at 280 ("[i]t is simply beyond argument that a passenger may not flee from the scene [of a traffic stop], regardless of whether police issue verbal commands overtly directing a passenger's movement."). In this circumstance, no additional, particularized suspicion attributed solely to the fleeing passenger is required. **Id**.

Herein, it is uncontradicted that the officers possessed the requisite probable cause to initiate a lawful traffic stop for an expired registration tag under 75 Pa.C.S. § 1301(a).[4] **See Commonwealth v. Harris**, 176 A.3d 1009, 1019 (Pa.Super. 2017) (finding that in circumstances where the suspected Motor Vehicle Code violation is such that it requires no additional investigation, the officer must possess probable cause before initiating the traffic stop); **see also** N.T. Suppression Hearing, 7/22/21, at 9 (Officer Dial testifying that, on May 12, 2021, he initiated a traffic stop of a 2004 Honda Accord after he observed that the driver was operating the vehicle on a public roadway and the registration had expired in June of 2020).

Indeed, rather than challenging the legality of the traffic stop, J.G. contends that the firearm's abandonment was coerced because the officers

---

[4] Section 1301(a) of the Pennsylvania Motor Vehicle Code provides that "[n]o person shall drive or move . . . upon any highway any vehicle which is not registered in this Commonwealth unless the vehicle is exempt from registration." 75 Pa.C.S. § 1301(a).

did not possess additional, individualized suspicion that J.G. himself had engaged in any criminal activity. **See** Appellee's brief at 7. Relying on **Dunham**, **supra**, the Commonwealth disputes J.G.'s claim that the officers needed additional justification before following J.G. **See** Commonwealth's brief at 12. Specifically, the Commonwealth alleges that the probable cause needed to initiate the traffic stop was sufficient to support the pursuit of J.G. **Id**. We agree with the Commonwealth that **Dunham** is directly on point and necessitates reversal of the suppression order.

In **Dunham**, officers initiated a traffic stop upon observing a violation of the Pennsylvania Motor Vehicle Code. Prior to the vehicle coming to a complete stop and before any verbal commands could be given by the officers, one of the three passengers, Dunham, fled from the vehicle on foot. During the ensuing foot pursuit, Dunham discarded a handgun and a bag of marijuana that were later recovered by the police. Dunham was arrested and charged with possessing the firearm and marijuana. Thereafter, Dunham filed a motion to suppress, contending that officers had coerced his abandonment of the contraband when they unlawfully pursued him. Dunham did not dispute the lawfulness of the traffic stop itself, but rather argued that additional, particularized suspicion was needed before officers could pursue him, since he was a passenger and had not engaged in any criminal activity.

The suppression court agreed with Dunham and granted the motion. The Commonwealth appealed and we reversed, finding that "a lawful traffic

stop constitute[d] a seizure of all occupants of the vehicle for the duration of the stop, with no additional, particularized suspicion required." *Id*. at 280. Since the police conducted the lawful traffic stop using their emergency equipment, a reasonable person in Dunham's position would have known that he should remain with the vehicle, even absent verbal commands from the officers to do so. *Id*. at 280. Therefore, Dunham was seized lawfully, prior to his flight from the vehicle, and police pursuit was "merely a lawful continuation of that seizure." *Id*. Thus, the recovery of the abandoned evidence did not violate Dunham's rights and should not have been suppressed. *Id*.

Here, as in **Dunham**, the traffic stop was still in progress when J.G. fled. Notably, J.G. did not contest the lawfulness of the traffic stop. The record reflects that the officers conducted the traffic stop using their emergency equipment and approached the vehicle in full uniform, attempting "to gather everyone back in the vehicle" when J.G. fled. N.T. Suppression Hearing, 7/22/21, at 10; *see also* Appellee's brief at 2 (conceding that he fled while the officers were attempting to gather everyone back into the vehicle). Therefore, consistent with **Dunham**, J.G. was seized lawfully prior to his flight and police pursuit was merely a lawful continuation of that initial seizure.

Furthermore, J.G.'s attempts to distinguish his case from **Dunham** are unpersuasive. **See** Appellee's brief at 5. J.G. contends that because the officers did not see him engage in any criminal activity, **Dunham** should not

apply.  *Id*.  However, this assertion simply ignores the **Dunham** Court's precise holding that a valid stop is sufficient to seize the vehicle's occupants and that police can pursue a fleeing occupant as a continuation of that seizure. **Dunham**, **supra** at 280.  Like in this case, the officers in **Dunham** also only discovered that Dunham possessed and abandoned narcotics and a firearm after they had apprehended him.  Accordingly, these particular facts are virtually identical and do not constitute grounds for distinguishment.  Instead, consistent with our holding in **Dunham**, we find that the officers did not coerce J.G.'s abandonment of the firearm and it should not have been suppressed.

Order reversed.  Case remanded for further proceedings.  Jurisdiction relinquished.

Judge Stabile joins this Memorandum.

Judge Lazarus concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/20/2022

- 10 -